339 So.2d 1382 (1976)
Billy Dale HILL
v.
STATE of Mississippi.
No. 48985.
Supreme Court of Mississippi.
November 16, 1976.
As Modified On Denial of Rehearing December 7, 1976.
Lawrence Chandler, Calhoun City, Ottis B. Crocker, Jr., Bruce, James L. Robertson, Greenville, for appellant.
A.F. Summer, Atty. Gen. by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, P.J., and ROBERTSON and BROOM, JJ.
*1383 BROOM, Justice, for the Court:
Capital murder under Mississippi Code Annotated section 97-3-19(2)(e) (Supp. 1976) was the offense for which Hill was convicted in the Circuit Court of Calhoun County. He appeals from the conviction and death sentence imposed upon him. The indictment charged that on September 5, 1974, he murdered Mrs. Minnie Hamilton while engaged in the commission of the crime of rape. Chief issues relate to: (1) how the trial court is to decide if a defendant is competent to stand trial, (2) how to determine criminal responsibility at the trial on the merits when the defendant pleads insanity, and (3) jury instructions. Upon the record before us, the case must be reversed.
The trial court having determined that Hill was an indigent, on September 25, 1974, appointed Ottis B. Crocker, Jr., of *1384 Bruce, Mississippi, and Lawrence Chandler of Calhoun City, Mississippi, to defend Hill. Through his court-appointed attorneys, the defendant filed numerous pre-trial motions, including a motion that he be transferred to the Mississippi State Hospital at Whitfield for psychiatric examination. After a hearing, the motion was overruled and a full trial was had on October 10 and 11, 1974. The jury returned a verdict of "Guilty as charged," and the court sentenced the defendant to death in the gas chamber.
Before the trial of the defendant, because the state did not resist the motion "that the Court order him transferred to the State Mental Hospital at Whitfield, Mississippi where he may be examined by psychiatrists on the question of his sanity," the circuit court on September 27, 1974, found that the motion was well taken and should be sustained.
However, the court, instead of ordering the defendant to be transferred to the Mississippi State Mental Hospital at Whitfield for psychiatric examination, as requested in the motion, merely ordered Hill to be examined by Dr. Charles H. Hubbert, a psychiatrist employed by Region II Mental Health Clinic in Oxford, Mississippi. On September 28, 1974, Dr. Hubbert orally examined the defendant for one hour and fifteen minutes. As to tests administered, Dr. Hubbert testified:
I did not do extensive psychological testing which I don't do as a rule anyway. However, I did do one little drawing test which the psychologists use in their testing and that accompanies my report.
Dr. Hubbert did not know the defendant nor had he ever examined or observed him except on this one occasion. He did not talk to any members of the defendant's family, nor did he get any previous history of the defendant's behavior, except what he elicited from the defendant himself in this one hour and fifteen minute interview.
On October 2, 1974, the court heard testimony of Ottis B. Crocker, Jr., court-appointed attorney, as to his complete inability to communicate with the defendant and his opinion that the defendant was not capable of helping his attorneys prepare a rational defense to the charge against him.
Tommy Hill, Jr., brother of the defendant, and Dorothy Conner, aunt of the defendant, testified as to the defendant's aberrant behavior and conduct.
Sheriff Richard E. Mooneyham, Mrs. Edna Byars, jailor at Pittsboro where defendant was confined, and Mrs. June Mooneyham, wife of the sheriff of Calhoun County, who took down the confession of the defendant, all testified that, in their opinion, the defendant knew the difference between right and wrong.
Dr. Hubbert's written report, which consisted of four single-spaced typed pages, was filed and considered at this hearing. Dr. Hubbert, in his report, stated that in his opinion the defendant knew the difference between right and wrong. Dr. Hubbert closed his written report with this conclusion and recommendation:
"Discussion: Based on my interview with the defendant, I find no psychiatric illness. This conclusion does not imply that the defendant has not had difficulties with his behavior. Concerning the defendant's criminal responsibility, I have concluded that he was able to know what he was doing at the time of the crime, and he was able to distinguish between right and wrong with reference to that act. To elaborate further, he was able to know what he was doing at that time and appreciated his behavior then. The defendant is capable of conferring with his attorneys, and he is competent to stand trial.
"The preceding paragraph of statements, of course, constitute my professional opinion of the defendant based on my psychiatric interview and observations. However, I recommend that other opinion be rendered concerning the defendant's criminal responsibility and that psychological testing and possibly an electroencephalogram be done as a part of this other opinion. Ideally, this could be accomplished through one of the state hospitals." (Emphasis added).
*1385 In spite of Dr. Hubbert's recommendation that the defendant undergo further psychiatric examination preferably at a state hospital, the trial court overruled the renewed motion to transfer the defendant to Mississippi State Hospital at Whitfield.
Assignments of error 7 and 8 were:
"The Court erred in refusing to permit Defendant to be examined by competent psychiatrists and psychologist in the Mississippi State Hospital in Whitfield, Mississippi to determine whether he was competent to stand trial."
"The trial court erred in refusing to permit examination of the Defendant at the Mississippi State Hospital at Whitfield, to determine whether he was criminally responsible for his actions on September 4-5, 1974."
The overruling of the motion to transfer the defendant to Mississippi State Hospital at Whitfield for psychiatric and psychological examination constituted reversible error. Upon the record as it now appears, before the defendant is again tried, he should either be (1) sent to Mississippi State Hospital at Whitfield for a careful and thorough examination, or (2) otherwise afforded appropriate and adequate determination of his sanity, and mental competency to conduct a rational defense pursuant to Mississippi Code Annotated § 99-13-11 (1972). Stevenson v. State, 325 So.2d 113, 117 (Miss. 1975); Robinson v. State, 223 Miss. 70, 77 So.2d 265 (1955); McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961). While considerable discretion is to be vested in trial judges applying § 99-13-11, in the present case the examination by the psychiatrist was inadequate as demonstrated by the fact that the examining psychiatrist himself testified that further examination of the defendant was needed.
This 18-year-old defendant was charged with the commission of a horrible and heinous crime, the crime of murdering an 87-year-old woman by stabbing her five times while committing the crime of rape. Her home had been broken into and her completely nude body was found early the next day in a pool of blood. The defendant could suffer death for this crime; yet the only psychological and psychiatric examination that was made of this defendant was an hour and fifteen minute interview by a psychiatrist who did not know the defendant and had never examined or observed him before.
As has been done many times in prior criminal cases where the issue of the defendant's sanity is raised, we are urged to abandon the M'Naghten Rule as to the determination of criminal responsibility. In place of the M'Naghten Rule, we are asked to accept and adopt the rule set forth in 4.01 of the American Law Institute's Model Penal Code (1962). That section would relieve a defendant of responsibility for criminal conduct:
... if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.
Such a rule in effect would provide for the acquittal of those who commit criminal acts and assert that they did such act or acts because of so-called uncontrollable urges or irresistible impulses. Though the M'Naghten Rule may not be a perfect means to test criminal responsibility, as this Court (including this writer) has said before, it is the safest of the rules proposed. M'Naghten better protects society's needs than the American Law Institute's proposed rule, supra, which the court has examined in earlier cases and found to be unsatisfactory. In making our decision we have carefully read and considered the views expressed in United States v. Freeman, 357 F.2d 606 (2d Cir.1966), and do not consider it persuasive. Language in that opinion which says of M'Naghten that "the expert is thereby compelled to test guilt or innocence by a concept which bears little relationship to reality" is simply not an expression of logic. Though M'Naghten may have had "Victorian origins" as said in Freeman, supra, we reject the thesis that it is not "grounded in reason" though admittedly the subjective *1386 aspects of sanity or insanity present difficult problems.
In Assignment of Error No. 26, the defendant contends that the trial court erred when it refused to grant these instructions:
INSTRUCTION FOR DEFENDANT NO. 11
The court instructs the jury for the defendant that if you acquit the defendant on the ground of insanity and you should find that the defendant has not since been restored to reason and that he is dangerous to the community, then the following will be the form of your verdict:
"We, the jury, find the defendant not guilty on the grounds of insanity, and certify that he is dangerous and has not been restored to reason."
INSTRUCTION FOR DEFENDANT NO. 12
The court instructs the jury for the defendant that if you find the defendant not guilty you may return one of the following verdicts:
"We, the jury, find the defendant not guilty," or,
"We, the jury, find the defendant not guilty by reason of insanity, and we find that the defendant has since been restored to his reason," or,
"We, the jury, find the defendant not guilty, by reason of insanity, and we find that he has not been restored to his reason." Or,
"We, the jury, find the defendant not guilty, by reason of insanity, and we find that he has not been restored to his reason and is dangerous."
Mississippi Code Annotated section 99-13-7 (1972) is the statutory authority for the giving of these instructions. That section provides:
When any person shall be indicted for an offense and acquitted on the ground of insanity the jury rendering the verdict shall state therein such ground and whether the accused have since been restored to his reason, and whether he be dangerous to the community. And if the jury certify that such person is still insane and dangerous the judge shall order him to be conveyed to and confined in one of the state asylums for the insane.
Upon a retrial of this case, instructions embodying these statutory directions should be granted.
Defendant also contends that Mississippi's capital murder statutes [Mississippi Code Annotated sections 97-3-19, 97-3-21 and 99-17-20 (Supp. 1976)] are unconstitutional. Defendant's contentions were specifically answered and decided adversely to the contentions of defendant in Jackson v. State, 337 So.2d 1242, Miss., in an opinion handed down October 5, 1976. We adhere to our opinion in Jackson.
We have carefully considered the other assignments of error and find them to be without merit or not likely to recur on a retrial of this case.
The judgment of the trial court is reversed and this cause remanded for a new trial.
This case was considered by a conference of the Judges en banc.
REVERSED AND REMANDED.
GILLESPIE, C.J., and SMITH, SUGG, WALKER and LEE, JJ., concur.
PATTERSON and INZER, P. JJ., and ROBERTSON, J., specially concur.
ROBERTSON, Justice (specially concurring):
I concur in this opinion in every respect, except in our continued adherence to the archaic, outmoded and illogically limited M'Naghten rule. I feel that this is the case and this is the time for this Court to abandon the M'Naghten rule (that a defendant is criminally responsible if he knew the difference between right and wrong at the time he committed the offense) and adopt the more modern and enlightened rule set forth in Section 4.01 of the American Law Institute's Model Penal Code (1962). The *1387 United States Court of Appeals for the Second Circuit, in adopting this rule, said:
"Nine long years of research, exploration and consideration culminated in the definitive version of Section 4.01, which was finally adopted by the Institute in 1962.
"Section 4.01 provides that `A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.' [footnote omitted]. For reasons which will be more fully set forth, we believe this test to be the soundest yet formulated and we accordingly adopt it as the standard of criminal responsibility in the Courts of this Circuit." United States v. Freeman, 357 F.2d 606, 622 (2d Cir.1966).
I was impressed with this reasoning of the Court of Appeals in United States v. Freeman, supra:
"Because M'Naghten focuses only on the cognitive aspect of the personality, i.e., the ability to know right from wrong, we are told by eminent medical scholars that it does not permit the jury to identify those who can distinguish between good and evil but who cannot control their behavior. The result is that instead of being treated at appropriate mental institutions [footnote omitted] for a sufficiently long period to bring about a cure or sufficient improvement so that the accused may return with relative safety to himself and the community, he is ordinarily sentenced to a prison term as if criminally responsible and then released as a potential recidivist with society at his mercy. To the extent that these individuals continue to be released from prison because of the narrow scope of M'Naghten, that test poses a serious danger to society's welfare. [footnote omitted].
"Similarly, M'Naghten's single track emphasis on the cognitive aspect of the personality recognizes no degrees of incapacity. Either the defendant knows right from wrong or he does not and that is the only choice the jury is given. But such a test is grossly unrealistic; our mental institutions, as any qualified psychiatrist will attest, are filled with people who to some extent can differentiate between right and wrong, but lack the capacity to control their acts to a substantial degree. As the commentary to the American Law Institute's Model Penal Code observes, `The law must recognize that when there is no black and white it must content itself with different shades of gray.' [footnote omitted].
"A further fatal defect of the M'Naghten Rules stems from the unrealistically tight shackles which they place upon expert psychiatric testimony. When the law limits a testifying psychiatrist to stating his opinion whether the accused is capable of knowing right from wrong, the expert is thereby compelled to test guilt or innocence by a concept which bears little relationship to reality. He is required thus to consider one aspect of the mind as a `logic-tight compartment in which the delusion holds sway leaving the balance of the mind intact. * * *'" [footnote omitted]. 357 F.2d at 618-619.
The court continues:
"The tremendous growth of psychiatric knowledge since the Victorian origins of M'Naghten and even the near-universal disdain in which it is held by present-day psychiatrists are not by themselves sufficient reasons for abandoning the test. At bottom, the determination whether a man is or is not held responsible for his conduct is not a medical but a legal, social or moral judgment. Ideally, psychiatrists  much like experts in other fields  should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. It is the psychiatrist who informs as to the mental state of the accused  his characteristics, his potentialities, his capabilities. But once this information is disclosed, it is society as a whole, represented by judge or jury, which decides whether a man with the characteristics described should or should not be held accountable for his acts. In so deciding, it cannot be presumed *1388 that juries will check their common sense at the courtroom door. As Professor Wechsler has rightly commented, `It's not to be expected that juries will lightly accept the proposition that one who seemingly knew in a true sense did not know. One would expect jury skepticism and the system is the healthier for that jury skepticism.' [footnote omitted].
"The true vice of M'Naghten is not therefore, that psychiatrists will feel constricted in artificially structuring their testimony but rather that the ultimate deciders  the judge or the jury  will be deprived of information vital to their final judgment. For whatever the social climate of Victorian England, today's complex and sophisticated society will not be satisfied with simplistic decisions, based solely upon a man's ability to `know' right from wrong. It is in this respect that the vast strides made in public awareness and acceptance of psychiatry and psychiatric methods may even be more significant than the scientific developments which gave rise to them. Few areas of modern American culture  from the personnel offices of our giant corporations to the pages of our mass-circulation magazines  have been untouched by the psychiatric revolution. In this setting, a test which depends vitally on notions already discredited when M'Naghten was adopted can no longer be blandly accepted as representing the `moral sense of the community.' To continue to apply such medically discarded concepts would be to follow a negative approach which is the result of a holdover of long outmoded attitudes rather than a policy decision grounded in reason or science." 357 F.2d at 619-20. (Emphasis added).
The Court continued:
"The genius of the common law has been its responsiveness to changing times, its ability to reflect developing moral and social values. Drawing upon the past, the law must serve  and traditionally has served  the needs of the present. In the past century, psychiatry has evolved from tentative, hesitant gropings in the dark of human ignorance to a recognized and important branch of modern medicine. The outrage of a frightened Queen has for too long caused us to forego the expert guidance that modern psychiatry is able to provide." 357 F.2d at 624-25.
The "mental defect" concept set forth in Section 4.01 supra, has been a part of the statutory law of Mississippi for many years (since 1920), in everything but name only.
Mississippi Code Annotated section 99-13-9 (1972) provides:
"When any person shall be indicted for an offense, and acquitted on the ground of feeble-mindedness, the jury rendering the verdict shall state therein such ground, and whether the accused constitutes a danger to life or property, and to the peace and safety of the community; and if the jury certify that such feeble-minded person is dangerous to the peace and safety of the community, or to himself, the court shall forthwith give notice of the case to the chancellor, or the clerk of the chancery court, whose duty it shall be to proceed with such person according to the law provided in the case of feeble-minded persons, the feeble-minded person himself being remanded to custody to await the action of the chancery court." (Emphasis added).
The term "feeble-mindedness" used in Sec. 99-13-9 and other statutes under Chapter 13, styled Insanity Proceedings, means, in modern parlance, "mental retardation". So Sec. 99-13-9 could be read as authorizing acquittal on the ground of mental retardation. Now re-read the standard set forth in section 4.01:
"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." (Emphasis added).
I think that the jury should be informed of any mental disease or mental defect that a psychiatrist or psychologist has found in the defendant, even though the testimony *1389 might fall short of proving the defendant insane, or that he didn't know the difference between right and wrong.
The courts of New Hampshire, Kentucky, Wisconsin, Massachusetts, and Idaho have abandoned the M'Naghten rule. Arizona, Minnesota and Hawaii have severely criticized it.
The M'Naghten rule was abolished by statute in Illinois, Maryland, Montana, Missouri, New York, and Vermont.
The Federal judiciary has been unanimous in its rejection of the M'Naghten rule.
The time has come for Mississippi to join her sister states in abandoning this archaic, outmoded and unreasonably limited formula for testing criminal responsibility.
PATTERSON and INZER, P. JJ., concur in this opinion.