492 So.2d 970 (1986)
T.J. PORTER,
v.
STATE of Mississippi.
No. 55711.
Supreme Court of Mississippi.
July 30, 1986.
*971 Forrest A. Johnson, Jr., Johnson & Johnson, Natchez, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and GRIFFIN, JJ.
PRATHER, Justice, for the Court:
T.J. Porter was indicted for murder after the shotgun slaying of Vardaman Freeman, a Natchez barber. After giving notice of his intention to offer the insanity defense, Mr. Porter was ordered to submit to a psychiatric examination. Mr. Porter was convicted of manslaughter, and was sentenced *972 to 20 years in prison. From his conviction, Mr. Porter brings this appeal.

I.
During the afternoon of Thursday, June 30, 1983, T.J. Porter entered the Rebel barber shop of Natchez, Mississippi, wielding a shotgun. Addressing Vardaman Freeman, the shop owner, Porter exclaimed, "You slept with her last night, and I'm going to kill you!" Mr. Freeman responded, "No Porter, I didn't," to which Mr. Porter answered, "Yes, you did, I caught you, and I'm going to kill you." Shortly afterward, Porter fired a fatal shotgun blast into the right side of Vardaman Freeman's chest.
Mr. Porter had become suspicious of a developing relationship between his wife and Mr. Freeman after Mrs. Porter moved out of the Porter home and filed for divorce. Mr. Porter even warned Mr. Vardaman's co-worker, Jan Beard, that he would kill Mr. Freeman if he caught Freeman with his wife. The Wednesday night before the Thursday slaying, Mr. Porter's suspicions were confirmed when he witnessed his wife spend the night at Mr. Freeman's home.
Shortly after the slaying, Mr. Porter located his attorney and surrendered himself to the sheriff of Adams County. He was charged with murder and was indicted September 6, 1983. Subsequently, Mr. Porter filed written notice of his intention to offer the insanity defense. Consequently, Mr. Porter was ordered to undergo a psychiatric examination to which he objected adamantly. The examination was conducted on March 26, 1984, nine months after the killing.
Prior to, and during his trial, Mr. Porter stipulated that he killed Vardaman Freeman with a shotgun during the afternoon of June 30, 1983. The issues were narrowed at trial to Mr. Porter's legal sanity at the time of the killing.
The jury failed to return a murder conviction, but returned a manslaughter conviction. Mr. Porter was sentenced to a term of 20 years in prison.

II.
Did the trial court err in ordering Mr. Porter to undergo a psychiatric examination?
The appellant contends the Fifth Amendment's proscription against compelled self-incrimination was violated when he was ordered to submit to a psychiatric examination. Authority for the circuit court to require a psychiatric examination is found in the Uniform Criminal Rules of Circuit Court Practice, Rule 4.08(2) which states in part:
The court may upon motion of the prosecuting attorney require the defendant to be examined by a competent psychiatrist selected by the court. No statement made by the accused in the course of any examination provided for by this rule shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding.
The present case is factually similar to United States v. Byers, 740 F.2d 1104 (C.A.D.C. 1984). In Byers, a murder defendant unsuccessfully asserted, and supported with expert testimony, an insanity defense. On appeal, the defendant argued that his Fifth Amendment guarantee against self-incrimination had been violated when a government psychiatrist testified concerning statements made by the defendant during a court-ordered psychiatric examination.
In an opinion authored by Judge Scalia, the Court commented, "[V]irtually all other circuits have addressed claims materially indistinguishable from that raised by appellant. They have uniformly held that where the defendant has interposed the defense of insanity, the Fifth Amendment's privilege against self-incrimination is not violated by a court-ordered psychiatric examination... ."[1] 740 F.2d at 1111.
*973 Accordingly, the court rejected the appellant's claim, holding that when a defendant raises the defense of insanity, he may constitutionally be subjected to compulsory examination by a court-appointed psychiatrist. 740 F.2d at 1115.
The Fifth Circuit Court of Appeals reached a similar conclusion in United States v. Cohen, 530 F.2d 43 (5th.Cir.1976). Resolving the issue whether a defendant's privilege against self-incrimination is violated per se by a court-ordered psychiatric examination to determine the accused's mental condition at the time of the offense, the court held, "[T]he government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selects... ." Id. at 48. The court continued, "Given the defendant's power to have any incriminating factual statements resulting from the examination suppressed, we think the proper analogy is to the required furnishing of handwriting exemplars by the defendant and similar proceedings." Id.
In the present case, the appellant attempts to distinguish Cohen on the fact that the defendant in Cohen offered expert testimony, while the defendant in the instant case offered no expert testimony. Absent an expert witness to testify on behalf of the defendant, the appellant argues there was no compelling reason for the state to use expert testimony.
This Court has held many times that lay testimony, as well as expert testimony, is admissible to prove a defendant's mental capacity to distinguish right from wrong at the time the crime is committed. Taylor v. State, 452 So.2d 441, 448 (Miss. 1984); Groseclose v. State, 440 So.2d 297, 301 (Miss. 1983).
This Court believes the present case is materially indistinguishable from Cohen and Byers. We therefore follow federal precedent and find the defendant's Fifth Amendment rights were not violated by the compelled psychiatric examination.

III.
Did the trial judge commit reversible error when he expressed his opinion on the defendant's sanity to Dr. Guild?
Prior to the trial, the trial judge telephoned Dr. Guild, a psychiatrist, to arrange the psychiatric examination. During their conversation, the trial judge "may have indicated to Dr. Guild that [the judge] doubted that Dr. Guild's examination of the defendant would reflect that [the defendant] was legally insane at the time of the commission of the crime."
The appellant claims the opinion of the psychiatrist might have been swayed by his conversation with the trial judge. To the contrary, the psychiatrist testified on voir dire:
I would add that in no way this, the Judge attempted to influence me in any way. In fact, we've had some disagreements in the past where I maintained that about three people were quite insane and, when he was the prosecutor. He took issue with that, so there were no pressure in any way to find any decision.
While the better procedure would have been for the trial judge to refrain from voicing any opinion, there is no evidence that the judge was attempting to sway the opinion of the psychiatrist. Likewise, there is no indication that Dr. Guild's opinion is anything less than an objective opinion based on his observation and examination of the appellant.
For those reasons this Court finds the appellant's assignment of error No. 2 is without merit.

IV.
Did the trial court err in allowing Dr. Guild to testify?
Over the objections of the defendant at trial, Dr. Guild testified it was his professional opinion that on June 30, 1983, Mr. Porter knew and appreciated the difference between right and wrong; Mr. Porter knew the nature and quality of the criminal act he was doing; and Mr. Porter knew what he was doing was wrong.
*974 On appeal, Mr. Porter challenges the competency of Dr. Guild's testimony, stating, "[Dr. Guild] should not have been allowed as an expert witness to give his opinion based upon a personal examination, when the examination was so patently insufficient."
Mr. Porter claims the psychiatric examination was insufficient because (1) it lasted only thirty minutes; (2) it was performed nine months after the killing; (3) Mr. Porter was given no structured test; (4) Dr. Guild testified on voir dire that more information would have been useful; and, (5) Dr. Guild expected the defense attorney to supply him with additional mitigating evidence if any existed.
Mr. Porter relies on Hill v. State, 339 So.2d 1382 (Miss. 1976) in which a murder conviction was reversed and remanded because the psychiatric examination was inadequate. In Hill, the defendant was examined by a psychiatrist for one hour and fifteen minutes. Although the psychiatrist found the defendant was able to distinguish right and wrong at the time of the crime, the psychiatrist recommended the defendant undergo further psychological testing to determine his criminal responsibility. 339 So.2d at 1384. This Court found it reversible error for the trial court to try the defendant without benefit of further psychiatric testing.
In Gray v. State, 351 So.2d 1342 (Miss. 1977), the defendant, relying on Hill v. State, 339 So.2d 1382 (Miss. 1976), contended his psychiatric examinations were insufficient because of their brevity.[2]
This Court responded:
In Hill the first psychiatrist who examined Hill recommended further psychiatric examination. Because of that fact, we ordered further psychiatric examination of defendant in Hill. Unlike Hill, in this case, there was no recommendation for further psychiatric examination so no error was committed by the court when it did order further psychiatric examination.
351 So.2d at 1348. See also, Billiot v. State, 454 So.2d 445 (Miss. 1984). (Psychiatric examination was not insufficient where psychiatrist did not call for further examination.)
In order to clarify what took place during the psychiatric examination, Dr. Guild testified:
The examination was done for thirty minutes. Now, you've got a trained psychiatrist and psychologist that have had ten years of experience in this field. It does not take you long to tell a horseshoe from a ballet slipper. You don't need to look at it very long, and sometimes thirty minutes is plenty of time to do this type evaluation. If we'd have thought that it needed to be done longer, we would have stayed there for three hours. If we thought that he needed to go into the hospital to be evaluated, we would have sent him. If we thought that he needed additional testing, we would have sent him. But we are not going to waste money unnecessarily.
In Mississippi, the question whether the opinion of an expert is based on, and supported by, sufficient facts or evidence to sustain it is a question of law for the court. Billiot v. State, 454 So.2d 445, 459 (Miss. 1984); Gulf Insurance Co. v. Provine, 321 So.2d 311, 314 (Miss. 1975). Only if the trial judge abuses his discretion will this Court reverse. Billiot, 454 So.2d at 459.
The record does not reflect an abuse of the trial judge's discretion. There was no request made by the psychiatrist for additional testing as evidenced in Hill and as required by Gray and Billiot. In addition, the alleged fallacies of the psychiatric examination go more to the weight of the evidence than the admissibility.

V.
Did the trial judge make incorrect comments about the insanity defense in the presence of the jury?
*975 At the trial, confusion arose concerning lay opinion testimony on the insanity of the defendant. In the midst of the confusion, the trial judge informed the defense attorney he was using an incorrect standard in his questioning. The defense attorney had been asking lay witnesses to testify regarding the defendant's sanity at the time of the shooting based on the witnesses' observations of the defendant prior to or after the shooting. For example, the defense attorney asked witness Coley, "[B]ased upon those things, do you have an opinion as to whether or not T.J. Porter knew the difference between right and wrong as to shooting Mr. Vardaman Freeman and could appreciate the nature and quality of those acts?"
During the cross-examination of witness Coley, the following exchange erupted:
Mr. Johnson, Jr.:
Your Honor, I object to this. I recall the question that I asked him was, right and wrong as to shooting Vardaman Freeman.
The Court:
That's not the law, Mr. Johnson.
Mr. Carney:
It's not the law 
The Court:
The law is if he understands right and wrong, period. Whether he has an understanding of 
Mr. Johnson, Jr.:
It says to the acts he's charged with, your Honor.
The Court:
Not completely, now. Not insanity. Go ahead, Mr. Carney. I overrule your objection.
The appellant contends the trial judge's comments constitute reversible error. A brief discussion of the law of the insanity defense is enlightening. Often criticized[3], the M'Naughten test is still applicable in Mississippi to determine the capacity of a defendant to commit a crime. Laney v. State, 486 So.2d 1242, 1245 (Miss. 1986). See also, Hunter v. State, 489 So.2d 1086, 1090 (Miss. 1986); Edwards v. State, 441 So.2d 84, 86 (Miss. 1983).
To be M'Naughten insane, a defendant must be unable to distinguish right from wrong at the time the act is committed. See Laney, 486 So.2d at 1245.
When the insanity defense is tendered, both expert testimony and lay testimony are admissible and useful. Groseclose v. State, 440 So.2d 297, 301 (Miss. 1983). When lay opinion testimony is elicited,
[A] lay witness may express an opinion that another is insane only when a sufficient predicate has been laid to establish that: (1) the witness has had a reasonably sufficient opportunity to observe the subject and (2) has noted behavior on his part reasonably indicative of an unsound mind and upon which he bases an opinion that the subject was, at the time of his observation by the witness, of unsound mind. The witness may not make a prognosis or project into some future time an opinion as to the mental condition of the subject nor may he extend it to a date subsequent to the observation. He is limited, in expressing an opinion, to the time when he had the subject under his observation.
Alexander v. State, 358 So.2d 379, 384 (Miss. 1978); See also, Johnson v. State, 475 So.2d 1136, 1146 (Miss. 1985).
Summarily, a lay witness must testify as to a defendant's sanity at the time of the witness's observation. From that testimony, and any expert testimony elicited, the factfinder must determine whether defendant was sane at the moment the crime was perpetrated. If a lay witness does not observe a defendant at the moment of the crime, the witness may not give opinion testimony concerning the defendant's sanity at that moment.
An unraveling of the appellant's argument indicates he simply confused the *976 M'Naughten test with the standard announced in Alexander. The ruling and the comments of the trial judge were correct. There was no reversible error.

VI.
Did the trial court err in refusing to replace juror Zuccaro?
One hundred thirty-five jurors were summoned to appear in the Circuit Court of Adams County to be considered for the jury panel in this case. Juror Charles K. Zuccaro was not one of them. Mr. Zuccaro had been subpoenaed to appear before the County Court of Adams County, but somehow found his way into the Circuit Court venire and on to the list of potential jurors for the present case.
Eventually, Mr. Zuccaro participated in voir dire and was accepted by both sides as a juror. He took his seat on the jury panel and participated during the entire trial. After both sides rested, but before the case was submitted to the jury, the defense counsel discovered the procedural snafu. They immediately moved to have juror Zuccaro replaced, but their motion was denied. The appellant now contends Mr. Zuccaro was not qualified to perform jury duty in this case as contemplated by Miss. Code Ann. § 13-5-67 (1972)[4], which reads in part:
Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.
The appellant argues "[P]art of a juror's qualification to be on a jury is to first be properly called to be on the jury. A person does not become qualified to sit on a jury merely by showing up in the courtroom at the beginning of the trial."
Regarding prejudice, appellant advances an argument rooted in conjecture. He submits, "[W]e know now that the juror Zuccaro voted to find the defendant guilty. There is no way of knowing how the alternate would have voted."
To resolve the issue at hand, it is helpful to remember the essential purpose of a jury. "The great object of jury trial is to secure a fair and impartial jury... ." City of Jackson v. McFadden, 181 Miss. 1, 15, 177 So. 755, 758 (1937). Likewise, the duty of the court is to see that a competent, fair, and impartial jury is impanelled. King v. State, 421 So.2d 1009, 1016 (Miss. 1982). In addition, "A case will not be reversed for irregularities or informalities in summoning and impaneling juries unless there is a radical departure from the statutory scheme." Tanner v. State, 190 So.2d 670, 672 (Miss. 1966).
In the present case, the path not chosen was the safer of the two alternatives. With two alternate jurors, the trial judge could have excused juror Zuccaro and avoided the question now facing this Court.
However, the record reflects no real prejudice to the defendant. The record is void of any evidence suggesting juror Zuccaro was not competent, fair or impartial. For those reasons, this Court finds no reversible error under this assignment.

VII.
Having found the remaining assignments of error to be without merit, the Court finds the manslaughter conviction of T.J. Porter should be affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] See Byers, 740 F.2d at 1111 for a detailed discussion of this topic by various Federal Circuit Courts of Appeal.
[2] Gray was examined once for twenty minutes and four or five times for fifteen minutes.
[3] See e.g., Groseclose v. State, 440 So.2d 297, 302-306 (Miss. 1983) (J. Robertson, J., Specially Concurring); Hill v. State, 339 So.2d 1382, 1386-1389 (Miss. 1976) (S. Robertson, J., Specially Concurring).
[4] Adapted into rule 47(d), Mississippi Rules of Civil Procedure.