## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 93-CT-01109-SCT

*ALVIN JUDE RUSSELL*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 9/23/93 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| FOR APPELLANT: | MICHAEL W. CROSBY |
| FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY KLINGFUSS |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 06/19/97 |
| MOTION FOR REHEARING FILED: | 7/3/97 |
| MANDATE ISSUED: | 12/3/97 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Russell was convicted of the murder of his wife and sentenced to life imprisonment. On appeal Russell argued that he was entitled to assert the defense of insanity and irresistible impulse, and that he should have been allowed to assert the defense of manslaughter. Russell argued that by failing to allow him to present expert and lay testimony on the issue of insanity and failing to allow him jury instructions on insanity and manslaughter, the trial court effectively prevented him from presenting his theories of defense.

¶2. The Court of Appeals reversed and remanded the case for a new trial on the failure of the trial court to grant jury instructions on the defendant's theory of defense. This Court granted the petition

for writ of certiorari filed by the State and now affirms the decision of the Court of Appeals reversing and remanding the case for a new trial, but modifies the Court of Appeals' ruling on the evidentiary questions.

¶3. In seeking a writ of certiorari the State argued that the decision of the Court of Appeals holds that the testimony of the defendant alone is sufficient to require the court to give an insanity defense instruction. The State also argued that the Court of Appeals in holding that it was error not to give a manslaughter instruction has rendered a decision in conflict with prior decisions of this Court. After consideration, this Court finds that both of the propositions raised by the State are without merit.

¶4. Since this case will be retried, it is appropriate that we consider whether the expert testimony and lay testimony on the issue of Russell's insanity were wrongly excluded. Of particular concern is whether there was any basis for the trial court's exclusion of Dr. Cox's testimony *in its entirety* simply because the court found that Dr. Cox's testimony "did not support the ultimate conclusion of insanity." The second area of concern was the Court of Appeals' reliance on **Porter v . State**, 492 So. 2d 970 (Miss. 1986), in finding that the court did not err in refusing to allow the lay witnesses to testify. **Porter** provides that a lay witness must testify as to a defendant's sanity *at the time of the witness's observation*, and that if the lay witness does not observe the defendant at the moment of the crime, the witness may not give opinion testimony concerning the defendant's sanity *at the moment*.

## STATEMENT OF THE FACTS

¶5. At the time of the shooting, Russell was forty-eight-years old and had many physical and emotional problems. He had been diagnosed as having a tumor on his pituitary gland which caused him to be confused and disoriented. He was also suffering from depression. He had left his employment with IBM after twenty-four years on early retirement as a result of the company downsizing and his fear that he would be laid off without any income if he did not choose retirement. A subsequent business venture with his wife failed. As a result of the strain caused by these problems, Russell's wife, Rebecca, left him and served him with divorce papers.

¶6. On the day of the incident, Russell and his wife met at a bank to withdraw money from a joint bank account. When Rebecca arrived Russell went to her car and started talking to her about agreeing to split everything equally. Russell thought that she had been irrational in her demands and influenced by her lawyer. Rebecca said that she would discuss it with her lawyer and turned to walk toward the bank. Russell testified that he did not know or remember what happened next, except he heard a gunshot and realized he had a gun in his hand. Russell then shot his wife again as she lay on the ground. Russell testified that he did not understand why he shot her again.

¶7. Throughout Russell's testimony, defense counsel solicited testimony regarding Russell's state of mind and sought to show why the verbal exchange between him and his wife would have triggered such a reaction. The court sustained the prosecution's objections to this testimony.

¶8. The defense sought to introduce the testimony of Dr. Aris W. Cox, a board-certified forensic psychiatrist. Dr. Cox's testimony was proffered, out of the presence of the jury. His testimony was not offered to show that Russell was insane but "to establish the condition and mental state and the affect of this medical condition on his emotion and reasoning ability." Defense counsel understood that he would not be able to get into Dr. Cox's opinion on irresistible impulse based on the court's

previous ruling on that question.

¶9. On proffer of this testimony, Dr. Cox expressed the opinion that Russell had an organic mental disease and that he suffered from an irresistible impulse which overwhelmed his reason, judgment and conscience. On cross-examination Dr. Cox testified that Russell did not suffer from a mental disease or defect sufficient in intensity to rise to the level of the M'Naughton standard. Dr. Cox stood by his opinion that Russell was able to distinguish right from wrong at the time of the shooting. The trial judge concluded that the testimony of Dr. Cox was not admissible because the doctor could not conclude that Russell did not know the difference between right and wrong, and thereby lay the proper predicate for an insanity defense.

¶10. Russell, through his attorney, expressed the intention to prove an insanity defense based on lay testimony. He shot Rebecca on September 17, 1992. He testified that he had been employed by IBM, a company known for its long standing policy of no layoffs, for twenty-four years, after which, in July 1992, he was compelled to take leave with a single lump-sum payment. With his wife, he invested a substantial portion of it in a business that turned out to be a confidence scheme, resulting in significant loss. It was only a few days prior to the event that his wife left him and filed for a divorce. Although he testified that he was not aware of shooting her until after he fired, he was severely restricted by the court in testifying as to his medical condition, medication that he was taking, and his state of mind. Russell sought to introduce testimony from his brother, Wayne Russell, and sister, Carole Haynes, as to his mental state. Carole Haynes testified in proffer as to her observations of and conversations and meetings with her brother and gave her opinion that he did not know the difference between right and wrong at the time of the shooting. Wayne Russell proffered similar testimony, but had had less frequent contact with his brother, the defendant. Carole Haynes said that she normally spoke with Russell at least twice a month and that in the two months prior to the shooting she had spoken with him four or five times per week. She spoke with him the day before the shooting. She testified to depression, loss of short term memory as to common events and disorientation as to time and place. She described him as being in a whirlwind. In her testimony she have specific examples to support her observations, all from a period of three or four weeks prior to the shooting. Neither she nor Wayne saw or had contact with Russell on the day of the shooting. The judge did not allow this testimony because these lay witnesses could not testify as to Russell's state of mind at the time of the shooting. In this way, the trial court prevented Russell from interposing any form of an insanity defense. The court also denied defense instructions dealing with manslaughter, deliberate design, and insanity.

## ANALYSIS

¶11. In his appeal Russell presented two issues, which he stated as follows:

**I. Was the Defendant entitled to assert the defense of insanity and irresistible impulse?**

**II. Should Alvin Russell have been allowed to assert the defense of manslaughter?**

### *Insanity Defense*

¶12. Mississippi courts apply the M'Naughton test in determining sanity. ***Westbrook v. State***, 658 So. 2d 847, 859 (Miss. 1995); ***Tyler v. State***, 618 So. 2d 1306, 1309 (Miss. 1993); ***Roundtree v. State***,

568 So. 2d 1173, 1181 (Miss. 1990); ***Davis v. State****,* 551 So. 2d 165, 173 (Miss. 1989). Simply put, "the test for insanity is whether the defendant was unable to distinguish right from wrong at the time the act was committed." ***Roundtree****,* 568 So. 2d at 1181. The determination as to a defendant's sanity is within the province of the jury, which may accept or reject expert and lay testimony. ***Tyler****,* 618 So. 2d at 1309; ***Roundtree****,* 568 So. 2d at 1181.

¶13. In ***Westbrook v. State****,* 658 So. 2d at 859, this Court reaffirmed that the defense of irresistible impulse is not available in Mississippi. The Court quoted the following passage from ***Edmond v. State****,* 312 So. 2d 702, 704 (Miss. 1975):

> This Court has recently (as it has done many times in the past), rejected the argument that one may escape responsibility for criminal acts done under some so-called *uncontrollable urge or impulse*. Admittedly, the M'Naughton test of criminal responsibility may not be a perfect means to test sanity of one charge with [sic] crime, but no better solution has been offered. Thus the test in this state remains the ability of the accused to realize and appreciate the nature and quality of his deeds when committed and the ability to distinguish between right and wrong.

*Id.* (citations omitted; emphasis added in *Westbrook*). While this is not to say that an uncontrollable or irresistible impulse will not factor into the determination of legal insanity, such impulse must spring from a mental disease existing to such a high degree as to overwhelm the person and conscience, i.e., to raise it to the M'Naughton standard. ***Billiot v. State****,* 454 So. 2d 445, 461 (Miss. 1984); ***Laney v. State****,* 421 So. 2d 1216, 1218 (Miss. 1982).

¶14. In excluding the proffered testimony of Carole Haynes and Wayne Russell, the judge relied on ***Porter v. State****,* 492 So.2d 970 (Miss. 1986), saying:

> Now the Court has listened to the lay testimony, and the following Rule 7.01 [MRE 701], following Porter versus State at 492 So. 2d 970, 1986 case, and reading Ms. Stanton's work on Mississippi evidence at page 165, I'm not sure about that, I think its page 165. It's under Rule 7.01. It says, "that in order for an opinion to be admissible that facts which the witness observed", speaking about 7.01 which deals with lay witnesses, "in order for an opinion to be admissible the facts which the witness observed must be of a character capable of forming a reasonable basis for an opinion of insanity."

> Now, I've allowed and I've asked and allowed the defendant to make a proffer of the lay witnesses that he wishes to call, certainly I can't compel him to put the defendant on the stand at this time and I'm not asking him to. But in reviewing the rules it says in Porter, "A lay witness may express an opinion that another is insane only when a sufficient predicate has been laid to establish two things; first, that the witness has had a reasonably sufficient opportunity to observe the subject; and (2)", and not or, "and secondly, has noted behavior on his part reasonably indicative of an unsound mind and upon which the witness bases an opinion that the subject was, at the time of his observation by the witness of unsound mind." It goes further and says, "that the witness may not make a prognosis or project into some future time an opinion as to the mental condition of the subject, not may be extend it to a date subsequent to the observation. The witness is limited in expressing an opinion to the time when he had the subject under observation." And at page 975 in the Porter opinion, not citing grossly close [sic], it says, "if a lay witness does not observe a defendant at the moment of the crime the witness may not

give opinion testimony concerning the defendant's sanity at that moment."

Now this Court has a difficult decision to make, and I can only predicate it on the best reading that I can make of the law that's been placed before me and the limited research that I have been able to do in relying upon what I think the criminal law should be based upon, and this is, upon common law, based upon the common sense approach to this matter.

In this case we have no medical proof to support it. In this case we have two lay witnesses who have testified, and from the record of their testimony I find that there is nothing which was testified to by either Mrs. Haynes or Mr. Russell concerning the defendant's behavior which reasonably indicated that at the time that they observed him being depressed, agitated, stressful, lack of concentration, fluidness of thought, whatever that observation is and other factors in the record, has nothing that would reasonably indicate that he, the defendant, was of an unsound mind at the time that they observed him.

And since they cannot under the law testify as to his sanity on the date in question, it is the opinion of the Court that their testimony, with this finding by the Court, that their testimony would not be allowed before the jury.

And furthermore, with the absence at this time of any lay opinion concerning sanity then likewise the medical history and the physical history and the mental history, if any that Dr. Cox would have testified about, as well as totally the irresistible impulse theory, will not be permitted to go before the jury at this time.

¶15. We cannot agree that the testimony of the lay witnesses, particularly that of Carole Haynes, contains nothing which would reasonably indicate that at the time they observed him, Russell was of unsound mind. The trial judge relies in part on the fact that there was no medical proof of an unsound mind; that of course, was a consequence of his exclusion of Dr. Cox' testimony.

¶16. **Porter** does not hold that a lay witness's testimony must be such that the witness has formed an opinion as to the ultimate insanity of the defendant at the time of the criminal act, nor that the testimony is to be excluded if it is insufficient to support an opinion by the witness of his sanity at the time of the criminal act. The admissibility of the testimony is not to be confused with the separate question of whether the witness is to be allowed to state an opinion as to the defendant's mental condition at the time of the observation. **Porter** declares:

When the insanity of defense is tendered, both expert testimony and lay testimony are admissible and useful. **Groseclose v. State**, 440 So. 2d 297, 301 (Miss. 1983). When lay opinion testimony is elicited,

[A] lay witness *may express an opinion* that another is insane only when a sufficient predicate has been laid to establish that: (1) the witness has had a reasonably sufficient opportunity to observe the subject and (2) has noted behavior on his part reasonably indicative of an unsound mind and upon which he bases an opinion that the subject was, at the time of the observation by the witness, of unsound mind. The witness may not make a prognosis or project into some future time an opinion as to the mental condition of the subject nor may he extend it to a date subsequent to the observation. He is limited, *in expressing an opinion*, to the time when he had

the subject under his observation.

*Alexander v . State*, 358 So. 2d 379, 384 (Miss. 1978); *see also Johnson v. State*, 475 So.2d 1136, 1146 (Miss. 1985).

Summarily, a lay witness must testify as to a defendant's sanity at the time of the witness's observation. From that testimony, and any expert testimony elicited, the fact finder must determine whether defendant was sane at the moment the crime was perpetrated. If a lay witness does not observe a defendant at the moment of the crime, the witness may not give opinion testimony concerning the defendant's sanity at that moment.

*Porter*, at 95 (emphasis added); in *Groseclose*, we also recognized that prior behavior and history as reported by lay witnesses is important and relevant.

Psychiatric and psychological expert witness testimony, while admissible and indeed quite desirable, is not the last word. Lay testimony has long been recognized as being equally admissible and useful where the insanity defense is tendered. *Smith v. State*, [245 So. 2 583 (Miss. 1971)]; *Lisa v. State*, [362 So. 2d 198 (Miss. 1978)]. Expert witnesses cannot recreate what occurred in the accused's mind at the time of the criminal act, nor could they, even if they were there, look inside that mind and ascertain what was there. As in all branches of medicine, they must of necessity rely substantially on history. It is within the actual and judicial knowledge of this Court that mental health professionals routinely place great reliance upon history obtained from lay witnesses. Our law does no less when it accepts the admissibility of lay witness testimony.

*Groseclose* at 301. *See also Gambrell v. State*, 238 Miss. 892, 120 So.2d 758 (1960), in which the Court reviewed lay observations of the defendant's behavior over many months in reversing the conviction.

¶17. We are not saying that a witness can testify as to the mental prognosis of a defendant or an accused but that a witness can testify to the witness's observations and interpretation of those observations of a defendant prior to the incident of the specific crime. Certainly a family member who talked to the defendant four or five times a week and on the day prior to the incident sub judice may testify regarding her observations of the defendant. We do not intend to expand the law as to irresistible impulse or uncontrollable impulse, nor do we recognize them as a defense in this State. However, a witness as to the mental condition of the defendant Russell is not limited to the specific moment of the crime, nor is that witness required to be a witness of the criminal act.

¶18. Thus, while the trial court correctly ruled that the lay witnesses could not testify as to Russell's mental condition at the time of the shooting, their testimony should have been allowed as to their reasonably proximate observations of the defendant, and, if those observations were sufficient, allowed to express opinions as to this mental condition at the time of those observations.

¶19. Russell's expert, Dr. Cox, was not of the opinion that Russell was insane under the M'Naughton standards. However, he examined Russell on three different days, reviewed his medical records from Oschner Foundation Hospital, including his x-rays and MRI scans, and talked to his treating doctor. He further consulted specialists in pituitary disease. He concluded that Russell had a lesion or tumor

in his pituitary stalk, an area of the brain which has much to do with regulating behavior, and that such a lesion could cause uncontrollable rage. He expressed the opinion that on the day of the shooting, Russell had a rage attack, largely predisposed by his disease, that was so profound as to overwhelm his reason and judgment. He further said that if Russell had, as the latter tried to give testimony on, suspended taking prescribed medication including replacement hormones, such discontinuance could have been a significant factor, making him confused and impairing his judgment. The trial court excluded this proffer, finding that his testimony did not support an insanity defense. Where the witness has testimony or properly predicated opinion which is relevant when viewed in the light of other evidence, it is not to be excluded solely on the basis that his ultimate opinion is not favorable to the defense. As enunciated in *Groseclose*, it is for the trier of facts, the jury -- not the witness -- finally to determine whether the evidence rises to the standard.

### *Manslaughter Defense*

¶20. Under the heading "II. REFUSAL OF THE MANSLAUGHTER INSTRUCTION," the Court of Appeals stated the following:

> The defendant also claims that the court erred in refusing a manslaughter instruction. Specifically, the defendant claims in his brief that the lower court erred in refusing all defense instructions as well as all defenses. The lower court denied defense's request for instructions dealing with manslaughter, deliberate design, and insanity. The defendant testified in essence that he did not know what he was doing at the time of the shooting and that he had no intention of hurting his wife when he met her at the bank. The court ruled that all of the defendant's testimony of the incidences which led up to the shooting was not admissible. We disagree.
>
> The defendant's testimony should have been admitted on the issue of insanity and on the issue of manslaughter. The defendant sought to testify that he was disoriented and confused and that he was under the care of a doctor for a pituitary tumor. He also testified that he had no intention of hurting his wife when he went to the bank to meet her. The defendant further claimed that he did not know what he was doing at the time of the shooting. In light of this testimony, the jury could have found the defendant guilty of manslaughter or found the defendant insane. The testimony should have been admitted and the proper jury instructions should have been given.

Slip opinion at 7.

¶21. The Court of Appeals quoted from *Giles v. State,* 650 So. 2d 846, 849 (Miss. 1995), where this Court stated that "[e]ven though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction."

¶22. Much of the State's argument that the Court of Appeals reached a conclusion inconsistent with existing Mississippi law is based on a misreading of the opinion. The State contends that the Court of Appeals coupled the insanity issue with the manslaughter issue and held that evidence of insanity reduces murder to manslaughter. The language of the opinion shows that these are spoken of in the alternative: "In light of this testimony, the jury could have found the defendant guilty of manslaughter *or* found the defendant insane."

¶23. Some of the confusion is generated by the Court of Appeals' choice of discussing and resolving issues unrelated to the question of the manslaughter instruction under this heading and issue. The second issue, as discussed by the Court of Appeals, could more properly be labeled as whether the defendant is entitled to have the jury instructed on his theories of defense, not just manslaughter. As Russell notes in his response, the State is not really arguing a conflict with prior case law; the State is arguing whether the evidence rises to the threshold level required for a manslaughter instruction. Under *Giles* all that is required is a "meager, highly unlikely" showing, and the Court of Appeals concluded that the requirements had been met.

¶24. The State, relying on *Taylor v. State*, 452 So. 2d 441 (Miss. 1984), argues that the defenses of insanity and manslaughter are distinct defenses and that an imperfect insanity defense does not warrant a manslaughter instruction. Though there is nothing wrong with that statement in the abstract, it does not control in this case. In *Taylor*, holding that manslaughter was not to be decided upon expert testimony, the Court distinguished the case then before it -- in which an insanity defense was not offered -- from situations, as now before us, wherein both manslaughter and insanity defenses were presented. The Court here said:

> In *Collins v. State*, [360 So. 2d 333 (Miss. 1978)] expert psychiatric testimony was admitted into evidence and the defendant was convicted of manslaughter and not murder. But that case is not authority for the admission of expert opinion evidence where the defense of insanity is not raised. In *Collins* both the defense of insanity and the alternative defense of manslaughter were raised at trial. Therefore, the expert opinion testimony was clearly admissible. Appellant here did not raise the complete defense of insanity. Therein lies the crucial difference between the two cases. Where insanity is not the defense, the determination of the ultimate fact of murder or manslaughter is left to the jury and is not subject to expert opinion.

*Taylor* at 449 (citations omitted).

## CONCLUSION

¶25. Russell came before the trial court with the two defenses of manslaughter and insanity. As the trial progressed, he was severely restricted in his own testimony bearing on these defenses and stripped of all lay and expert evidence of his health, mental condition and state of mind. Then he was denied all instructions on both questions. The decision of the Court of Appeals is faithful to this Court's precedent on the two underlying principles: that a defendant should be allowed to present his theory of defense and that the jury should be given the option of a lesser-included offense where there is any evidentiary basis. This Court in *Graham v. State*, 582 So. 2d 1014, 1017-18 (Miss. 1991), stated that "a lesser included offense instruction should be granted unless the trial judge -- and ultimately this Court -- can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge). *See also Dedeaux v. State,* 630 So. 2d 30, 33 (Miss. 1993); *Gates v. State*, 484 So. 2d 1002, 1004 (Miss. 1986). Here the Court of Appeals held that the case should be remanded to allow Russell to testify and to have the jury properly instructed on the law of the case. On remand the admissibility of evidence, whether factual or opinion, should be weighted in the light of the principals stated herein; although lay

witnesses may not give opinions as to the mental state of the defendant at the time of the incident charged, they are

to be allowed to give relevant, material and probative testimony as to behavior which will bear on the defenses, and, if their observations are sufficient, opinion as to his mental state at the time of the observations. Likewise, although an expert presented may not testify for the purpose of establishing a manslaughter claim, his observations fairly relating to defendant's medical history and condition or to sanity may be submitted to the jury, even if his conclusion is not supportive, if that issue is fairly raised and those observation are helpful to the jury in determining the ultimate fact of sanity and otherwise admissible.

¶26. The decision of the Court of Appeals is affirmed. This case reversed and remanded for a new trial.

¶27. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**LEE, C.J., SULLIVAN P.J., BANKS, McRAE AND MILLS, JJ., CONCUR. PRATHER, P.J., CONCURS IN RESULT ONLY. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J.**

**SMITH, JUSTICE, DISSENTING:**

¶28. The majority affirms the Court of Appeals' reversal of Alvin J. Russell's conviction for killing his wife, but proclaim that since the case is to be retried by another jury, the opinion is modified to address an improper analysis by that court of evidentiary questions. I disagree with the majority view and therefore dissent.

¶29. First, neither the Petition for Certiorari filed by the State nor the response of Russell raised the admissibility of expert and/or lay testimony as issues. Accordingly, this Court should not address these issues unless we affirmatively do so applying M.R.A.P. 2. *Harris v. State*, 92-CT-00297-SCT, slip op. (Miss. February 6, 1997)**.**

¶30. Second, I find no fault with the trial judge's denial of Dr. Aris W. Cox's testimony offered for the specific purpose of establishing an irresistible impulse during the killing, an attempt to establish Russell's insanity at the time of the killing. An examination of this record, specifically Russell's proffer of Dr. Cox's testimony, is indeed revealing concerning exactly what Russell was attempting to prove regarding his mental state at the time of the killing of his wife. It is clear from the record that Dr. Cox's testimony was not offered to establish that Russell was insane. Dr. Cox admitted on cross-examination that Russell knew right from wrong and that Russell did not suffer from a mental deficiency sufficient to rise to the level of this Court's M'Naghten standard. This Court has applied the M'Naghten test in determining sanity. *Westbrook v. State*, 658 So. 2d 847, 850 (Miss. 1995). "The test for insanity is whether the defendant was unable to distinguish right from wrong at the time

the act was committed." ***Roundtree v. State***, 568 So. 2d 1173, 1181 (Miss. 1990). The majority readily agrees that these are facts established by this record.

¶31. If not offered to establish an insanity defense, what then was Dr. Cox's testimony calculated to establish? Dr. Cox's testimony could not be allowed to establish that Russell suffered from an irresistible impulse during the killing of his wife, because this Court has held that the defense of irresistible impulse is not available in Mississippi. ***Westbrook v. State***, 658 So. 2d at 850, quoting ***Edmond v. State***, 312 So. 2d 702, 704 (Miss. 1975). However, the defense of irresistible impulse, although normally not available in Mississippi, is allowed if it rises to the M'Naghten standard of insanity. ***Billiot v. State***, 454 So. 2d 445, 461 (Miss. 1984). The majority correctly recognizes that such defense was not available to Russell. However, the majority, although correctly stating the facts, nevertheless appears to ignore the specific purpose of Cox's testimony as stated in Dr. Cox's proffer. Again, an examination of the record is helpful in discerning the purpose of Dr. Cox's testimony. The proffer clearly states that Dr. Cox's expressed opinion was that Russell had an organic mental disease and that he suffered from an *" irresistible impulse"* which overwhelmed his reason, judgment and conscience. This was nothing more than an attempt to establish an insanity defense without laying a proper predicate. The trial judge had previously ruled that Dr. Cox would not be allowed to testify about any irresistible impulse which caused Russell to kill his wife. Defense counsel clearly understood the trial court's ruling. Dr. Cox testified that Russell knew right from wrong. Thus, Dr. Cox's testimony concerning Russell's irresistible impulse did not rise to the level of the M'Naghten standard of insanity. The trial court's ruling was absolutely correct as revealed by the facts established within this record.

¶32. The majority also faults the trial court for denying the lay testimony of Russell's brother Wayne Russell and his sister, Carole Haynes, as to his mental state. The majority is correct in holding that both siblings should be allowed to express their lay opinion as to Russell's mental state at various recent times when they had personally observed Russell's conduct, including incidents occurring prior to the killing. However, "[A lay witness is] limited in expressing an opinion, to the time when he had the subject under his observation." ***Porter v. State***, 492 So. 2d 970, 974-75 (Miss. 1986), *citing* ***Groseclose v. State***, 440 So. 2d 297, 301 (Miss. 1983); *See also* ***Alexander v. State***, 358 So. 2d 379, 384 (Miss. 1978) and ***Johnson v. State***, 475 So. 2d 1136, 1146 (Miss. 1985). Additionally, "The witness may not make a prognosis or project into some future time an opinion as to the mental condition of the subject nor may he extend it to a date subsequent to the observation." ***Porter*** at 975.

¶33. The problem which the majority fails to note is that both siblings were attempting to give their lay opinions concerning Russell's sanity on the day of the killing when their proffered testimony in this record clearly indicates that on that date neither of the lay witnesses saw Russell.. When asked upon what basis of behavior he drew his opinion on the date of the murder, Wayne Russell stated, "Well I wasn't there." Carole Haynes testified that her brother may have lacked capacity "at varying times." She further testified that Russell was "on the normal side," "regaining sanity" prior to the day of the murder. When questioned specifically what events she had observed that was the basis of her opinion Haynes stated, "I don't know." In order to establish a basis for her opinion, Haynes was required to "first detail relevant facts known to [her], *based on events which [she had] observed.* ***Conner v. State***, 632 So. 2d 1239, 1266 (Miss. 1993). Additionally, Haynes was also subject to *"* the familiar *"requirement of first-hand knowledge or observation."* ***Conner*** at 1267.

¶34. Finally, the majority faults the trial judge for failure to give a manslaughter instruction. The evidence must warrant an instruction on the lesser-included offense before it can be granted. *Graham v. State*, 582 So. 2d 1014, 1017 (Miss. 1991), *citingSteven v. State*, 458 So. 2d 726, 731 (Miss. 1984). Here, there was no evidence tendered which warranted the giving of a manslaughter instruction. Additionally, this Court has stated, "In manslaughter the malice or intent to kill must arise from a present provocation and this provocation must stem from the deceased." *Gaddis v. State*, 207 Miss. 508, 515; 42 So. 2d 724(1949).

¶35. Russell's shooting of his wife occurred upon his meeting her at the bank. He exited his vehicle and approached her with the gun in his hand. Russell's excuse was that his wife was being ambivalent and told him that she would take his suggestions under consideration and "discuss it with my lawyer." Whereupon, Russell proceeded to shoot her. While she was lying on the ground, Russell shot her a again, this time in the head. The second shot was the fatal shot which caused her death as established by the State's expert witness. Russell tossed the gun into his truck and waited for police to arrive, whereupon he confessed, "I just killed my wife." Words alone are not sufficient provocation. *Johnson v. State*, 416 So. 2d 383, 387 (Miss. 1982)*; Gates v. State*, 484 So. 2d 1002, 1005 (Miss. 1986); *Stevens v. State*, 458 So. 2d 726, 731, (Miss. 1984). Merely stating that she would talk to her lawyer could never qualify as sufficient provocation to justify granting Russell a manslaughter instruction. Provocation? Hardly. Without a scintilla of evidence in this record to support the granting of a manslaughter instruction, the trial court was correct in denying one.

¶36. I respectfully dissent.

**ROBERTS, J., JOINS THIS OPINION.**