351 So.2d 1342 (1977)
Jimmy Lee GRAY
v.
STATE of Mississippi.
No. 50159.
Supreme Court of Mississippi.
November 16, 1977.
*1344 Louis Fondren, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
Before the Court En Banc.
SUGG, Justice, for the Court.
Defendant was convicted of capital murder and sentenced to death by the Circuit Court of Jackson County. We reverse and remand for a new trial.
This is the first death penalty verdict we have considered since Jackson v. State, 337 So.2d 1242 (Miss. 1976) which was tried in two stages as required by Jackson, the first to determine guilt, the second to determine punishment.
Defendant assigns twenty-seven errors and in his fourteenth assignment of error he attacks the constitutionality of the statute under which he was indicted. This assignment of error is stated in the following language:
The Section 97-3-19(2) of The Mississippi Code of 1972 is unconstitutional in that it is vague in its terminology in requiring no design to effect death, so that no criminal intent upon the part of the Defendant is even essential in finding him guilty of Capital Murder under that section.
Defendant was indicted under section 97-3-19(2) Mississippi Code Annotated (Supp. 1977) which reads as follows:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
.....
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies; .. .
Defendant's main argument is that the language contained in subparagraph (e), "When done with or without any design to effect death," is so vague that it is constitutionally deficient. This argument overlooks the other provisions of the statute under which he was indicted. The statute requires, (1) that a person kill a human being without authority of law, (2) while such person is engaged in the commission of the crime of rape, burglary, kidnapping, arson *1345 or robbery, or in any attempt to commit such felonies. The statute is not vague and simply defines the crime of capital murder as the killing of a human being without authority of law when engaged in the commission of the crime of kidnapping and the other felonies enumerated therein. We believe that the intent of the legislature in enacting the statute was to save the lives of victims of crimes. If the perpetrators of the crime of rape, burglary, kidnapping, arson or robbery know there is a possibility they will suffer the death penalty for killing their victims, such knowledge may, and probably will, deter such persons from taking the life of the victim of the crime. We perceive no constitutional infirmity because the statute clearly defines the elements of the crime and the indictment charged each element set forth in the statute.
Three errors occurred during the guilt stage of the trial which require reversal. The first error was the trial court refused to permit defendant to argue his case to the jury. During the argument at the guilt stage of his trial defendant requested permission to "make a statement to the jury." In effect, defendant was requesting the right to argue his own case and his request was erroneously denied. Mississippi Constitution Article 3, section 26 (1890) provides in part:
In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, .. .
The refusal to permit defendant to argue his case is in direct violation of the above constitutional provision and requires reversal.
The second error was permitting the state to show that defendant was on parole which was simply another way of showing that he had been convicted of another crime. The defendant did not testify at the first stage of his trial so evidence that defendant was on parole was not admissible for the purpose of impeaching his testimony under section 13-1-13 Mississippi Code Annotated (1972). It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See, Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 25 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969), cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970). We have numerous cases on this point, but the fact that defendant was on parole does not fall within any of the recognized exceptions. It was therefore error to permit the state to prove that the defendant was on parole at the guilt stage of the trial. A prior conviction "of another capital offense or of a felony involving the use or threat of violence to the person" is admissible at the second stage of a trial for a capital crime as an aggravating circumstance to be considered by the jury in determining punishment. Miss.Gen.Laws Ch. 548, § 5(b) (1977).
The third error was the testimony of an officer who was permitted to state that he asked the defendant if he had ever taken the little girl who was the victim in this crime and a little boy under a bridge at Bartlett Street. Initially an objection to the testimony was overruled but later sustained; however, the officer further testified that defendant stated he had never taken the children under the bridge but found them there while walking in the area. The officer stated that, at this time, he determined the defendant should be taken to the police station for questioning. This evidence, together with the evidence that the defendant was on parole was especially damaging and deprived defendant of a fair trial. The evidence should have been confined *1346 solely to the question of his guilt or innocence of the crime with which he was charged. The only purpose for introducing this evidence was to prejudice the jury by inferring that defendant was a child molester.
At the punishment stage of the hearing the court required the defendant to proceed before the state. This was error because the state has the burden to prove, not only the guilt of the defendant, but also to prove aggravating circumstances as set forth in Miss.Gen.Laws Ch. 458 (1977). This is error which requires reversal of the punishment stage of the trial.
Further in the punishment stage the court limited the argument of defendant's counsel to twelve minutes. This was clearly an abuse of discretion because this stage of the trial is for the purpose of determining whether defendant will live or die and a defendant should be given ample time to fully argue this important question. The court also limited the content of the argument of defendant's counsel. The trial judge should not interfere with argument unless counsel clearly and conclusively exceeds the legitimate field of the argument. In the case of Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817 (1930) this Court stated, with reference to argument of counsel, the following:
Counsel necessarily has and must have to serve his function and office, a wide field of discretion. He may comment upon any facts introduced in evidence. He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for, as eloquently pointed out by Chief Justice WHITFIELD in Gray v. State, 90 Miss. 235, 43 So. 289. Counsel is not required to be logical in argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever way he deems proper, so long as he does not become abusive and go outside the confines of the record. Usually when the argument is considered as a whole it is found consistent and logical and frequently eloquent. Some of the greatest speeches in our history have been made within the courthouse. As has been said, the court cannot control the substance and phraseology of counsel's argument; there is nothing to authorize the court to interfere until there is either abuse, unjustified denunciation, or a statement of fact not shown in evidence.
Counsel may draw upon literature, history, science, religion, and philosophy for material for his argument. He may navigate all rivers of modern literature or sail the seas of ancient learning; he may explore all the shores of thought and experience; he may, if he will, take the wings of the morning and fly not only to the uttermost parts of the sea but to the uttermost limits of space in search of illustrations, similes, and metaphors to adorn his argument. He may reach the uttermost heights of attainable eloquence, soar into the empyrean heights where his shadow may fall on the loftiest mountain top, as the eagle in its loftiest flight. He may borrow from every source, modern and ancient, such materials as he needs for his argument. He may clothe the common occurrences of life in the habiliments of poetry and give to airy nothings a habitation and a name. He may weave of words a rhetorical bouquet that enchants the ear and mesmerizes the mind. He may make the learning of the ages the servant of his tongue. His argument may be as profound as logic and learning can make them. He may give wing to his wit and play to his imagination so long as he does not imagine fact not in evidence, which the court does not take judicial knowledge of, or does not go out of the record for the facts not in evidence. As to the facts in evidence, he may array them in such figures and form and clothe them with such ideas and conclusions as he can conjure up in his mind for the best interest of his cause. *1347 He cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudices of men by injecting prejudices not contained in some source of the evidence. (159 Miss. at 382, 383; 131 So. at 820, 821).
Defendant also argues that it was error for the court to grant Instruction No. 4[1] for the state. This instruction is proper in a death penalty case because the jury should be informed that death penalty cases are tried in two stages. The court also granted defendant's instruction[2] pertaining to lesser included crimes. During the closing argument for the state the following occurred:
But the Court has instructed you that when you go out to consider your first verdict, your first verdict will be that the defendant is guilty, or he's not guilty. That's all. And after you have decided that question, and brought that verdict back into this Court, that the Court then will allow you to hear additional evidence, and give you additional instructions. Then on the second part of the trial you decide the verdict of the punishment.
BY MR. FONDREN: Your Honor. Excuse me, Your Honor. I hate to interrupt, but, there are a number of alternatives, including kidnapping, other than a guilty or a not guilty. So counsel is incorrect. I want to point that out.
BY THE COURT: Counsel is not incorrect on what he has stated about Capital Murder. There are two trials. The first is to determine his guilt or innocence, and then, if they find him guilty, then they hear the case on the punishment. That's the law. I didn't write the law, but that's what the Supreme Court of the United States said the law is, and what the law is of the State of Mississippi.
Defendant argues that the statement of the trial judge and the statement of the district attorney effectively negated the effect of his instruction on lesser included offenses. We would not reverse if this were the only error in the records; however, the district attorney, when defendant obtains an instruction as to lesser included offenses, should not couch his argument, and the court should not make its ruling, in such terms as to negate the effect of defendant's lesser included offense instruction.
Defendant argues that the court erred by overruling his motion to quash his psychiatric examinations as being insufficient. Two psychiatric examinations were performed on the defendant, the first by Dr. W.D. Bridges, a psychiatrist on the staff of the Jackson County Singing River Hospital, the second by the staff at the Mississippi State Hospital at Whitfield. The only evidence produced by defendant on the motion to quash was his testimony that the psychiatric examination by Dr. Bridges lasted approximately twenty minutes *1348 and that he was examined three or four times at Whitfield with each examination lasting approximately fifteen minutes.
Defendant relies on Hill v. State, 339 So.2d 1382 (Miss. 1976) as authority for his contention that his psychiatric examinations were insufficient. In Hill the first psychiatrist who examined Hill recommended further psychiatric examination. Because of that fact, we ordered further psychiatric examination of defendant in Hill. Unlike Hill, in this case, there was no recommendation for further psychiatric examination so no error was committed by the court when it did not order further psychiatric examination.
Of course, under his plea of not guilty, defendant was entitled to present the defense of insanity. McLeod v. State, 317 So.2d 389 (Miss. 1975). However, the defendant did not present any evidence of insanity on his motion to suppress or at either stage of his trial.
Defendant also contends that the court erred by not allowing tapes of his statements given to the police to be admitted as evidence on his motion to suppress. On the motion to suppress it was developed that defendant was given his Miranda warnings before statements were taken from him and he charges that the tapes should have been admitted in evidence for the purpose of the motion only. The colloquy surrounding this assignment of error shows that the state tendered the tapes to the defendant but defendant merely requested the court to have them marked for identification. No error resulted because the court complied with defendant's request and permitted the tapes to be marked for identification.
Defendant assigns as error the failure to give the following instruction:
INSTRUCTION D-6
The Court instructs the jury that it is not incumbent upon the Defendant to show how the deceased came to her death, and although the jury may believe from the evidence that she died from smothering or inhalation of aspirated muddy material, yet that alone is not evidence of Defendant's guilt; that before the jury can convict the Defendant, the jury must believe from the evidence and beyond a reasonable doubt and to a moral certainty:
Both that the deceased came to her death by smothering or inhalation of aspirated muddy material; and that the Defendant personally caused her death by smothering her or by forcing her to inhale aspirated material for the purpose and with the intent to kill and murder the deceased; and if you have a reasonable doubt as to any one of these facts, then it is your duty to find the Defendant Not Guilty of Capital Murder.
The court did not err in refusing the instruction as submitted because intent to kill and murder a victim is not a necessary element in the crime of capital murder when the defendant kills his victim in the commission of the crime of kidnapping or in an attempt to commit the crime of kidnapping.
Defendant contends that the trial judge erred when he defined reasonable doubt in an oral instruction to the jury before it was questioned for cause. Defendant did not brief this question but argued it orally. Before the jury was questioned for cause by the court and counsel for the state and the defendant, the court made a lengthy statement explaining to the prospective jurors the procedure that would be followed and in the course of this explanation gave the jury some instructions on the law that applied to the case. Among these instructions was a definition of reasonable doubt. An instruction defining reasonable doubt is not proper. See Pittman v. State, 350 So.2d 67 (Miss. 1977) and cases cited therein.
Although some explanation to prospective jurors, before they are questioned for cause, is necessary to inform them of the charge against the defendant and the procedure that will be followed in the trial, judges should not attempt to give any instructions about the law pertaining to the *1349 case at this time. Instructions are to be given in writing at the conclusion of the testimony and before argument by counsel.
Defendant also argues that the trial court erred when it identified the instructions to the jury as instructions given by the court, instructions given for the state, and instructions given for the defendant. In Newell v. State, 308 So.2d 71 (Miss. 1975) we held that, in addition to the written instructions requested by the attorneys for the litigants, the trial judge may initiate and give appropriate instructions in order that the jury may be fully instructed as to the law in each case. In Newell we stated:
These instructions bearing the court's approval will be read to the jury by the judge before the argument of the attorneys as the instructions of the court and will be taken out by the jury when considering its verdict... . (308 So.2d at 78).
Following our decision in Newell the circuit judges of the state adopted Rule 28 of the Uniform Rules for the Circuit Courts of Mississippi. Rule 28 provides that all instructions shall not be identified other than by a letter prefix. Trial judges should instruct the jury as to the law of each case by reading the instructions to the jury before the argument of the attorneys and identifying all instructions as the instructions of the court. Failure to follow this procedure was not reversible error under the facts of this case, but to avoid the possibility of reversal, trial judges should follow the procedure in Newell, supra, rather than experimenting with other procedures.
While not assigned as error, we deem it advisable to comment on the form of the verdict of the jury at the second stage of the trial which is a separate sentencing proceeding where the jury determines whether the defendant will live or die. The verdict of the jury was:
We, the Jury, find unanimously after weighing the mitigating circumstances and the aggravating circumstances do not outweigh the aggravating circumstances and that the Defendant should suffer the penalty of death.
Miss.Gen.Laws Ch. 458, § 3 (1977) deals with the conduct of the sentencing proceedings and provides:
Section 3. The statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in the charge and in writing to the jury for its deliberation. The jury, if its verdict be a unanimous recommendation of death, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstance or circumstances which it unanimously found beyond a reasonable doubt. Unless at least one (1) of the statutory aggravating circumstances enumerated in this act is so found or if it is found that any such aggravating circumstance is overcome by the finding of one or more mitigating circumstances, the death penalty shall not be imposed. If the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment for life.
It will be observed that the statute requires a different form of verdict than the one set forth in Jackson v. State, supra. Miss.Gen.Laws Ch. 458 (1977) was enacted after our decision in Jackson, supra, and sets forth aggravating and mitigating circumstances to be considered by the jury at the punishment stage of a capital case. Juries shall be instructed in accordance with the statute in all trials after April 13, 1977, the effective date of the statute.
The other assignments of error have been considered and we find no merit in them.
REVERSED AND REMANDED.
All Justices concur.
NOTES
[1] S-4
The Court instructs the Jury that this phase of the trial deals only with the question of the guilt or innocence of the Defendant. In the event that you find the Defendant guilty of Capital Murder another hearing will be held to determine whether the Defendant shall be sentenced to death or life imprisonment.
[2] D-5
The Court instructs the jury that if the jury can deduce from the facts and circumstances surrounding the case, either from the evidence or lack of evidence, any reasonable hypothesis consistent with the Defendant's guilt of a lesser offense than Capital Murder, then there is a reasonable doubt of his being guilty of Capital Murder, and the jury should return one of the following verdicts:
"We, the jury, find the Defendant not guilty of Capital Murder, but we do find the Defendant guilty of Murder, in which event it will be the duty of the Court to sentence the Defendant to life imprisonment.," OR,
"We, the jury, find the Defendant not guilty of Capital Murder, but we do find the Defendant guilty of Kidnapping, in which case you, the jury, may sentence the Defendant to life imprisonment or, if you cannot agree upon his punishment, it is the duty of the Court to sentence him as provided by law.": OR,
"We, the jury, find the Defendant not guilty of Capital Murder, but we do find the Defendant guilty of Manslaughter, in which case the Court shall sentence him as provided by law."