| IN THE SUPREME COURT OF MISSISSIPPI | |
|---|---|
| NO. 96-CT-01085-SCT | |
| *ANTHONY WILLIAM MILLER* | |
| *v.* | |
| *STATE OF MISSISSIPPI* | |

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/96 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE S. SHADDOCK |
| | CALVIN D. TAYLOR |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/23/1999 |
| MOTION FOR REHEARING FILED: | 10/07/99; denied 01/13/2000 |
| MANDATE ISSUED: | 01/20/2000 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Anthony William Miller was indicted for the capital murder of Chase Bradley, an infant. Miller was convicted of capital murder, but the jury could not reach a verdict in the sentencing phase, and Miller received a sentence of life imprisonment without parole. Miller appealed to this Court, which assigned the case to the Court of Appeals. The Court of Appeals affirmed the judgment of the Circuit Court. This Court granted Miller's petition for writ of certiorari to consider the three issues: alleged inadmissible evidence, lack of requirement of deliberate design in a capital murder case in which the underlying crime is child abuse and/or battery, and failure to give a lesser-included-offense instruction. After due consideration, this Court finds no error and affirms.

I.

¶2. On August 4, 1995, Gwendolyn Bradley left her fourteen-month-old son, Chase, with Anthony William Miller at his trailer home in Neely, Mississippi. Gwendolyn and Chase were living with Miller. Miller had agreed to watch Chase while Gwendolyn ran errands in town.

¶3. According to Miller, as Gwendolyn left the trailer, he walked into the living room to give Chase some liquid Tylenol. He heard Gwendolyn yell to him as she walked out the side door, but did not understand her. Miller testified that he left Chase in the living room and walked to the side door to find out what Gwendolyn said, but she had already departed in the car. Miller said that he walked back into the living room, but did not see Chase. He checked throughout the trailer, but Chase was not present. Miller stated that he finally found Chase sitting in front of the trailer steps crying.

¶4. After picking Chase up and walking into the trailer, Miller noticed that a small amount of blood was coming from the corner of Chase's mouth. According to Miller, as he wiped the blood away with a washcloth, Chase began to have a seizure. Miller picked up Chase and took him to his mother's trailer next door. Together they drove to the Ambulance Service in Leakesville. Miller explained to his mother that he thought Chase might have accidentally been run over by Gwendolyn when she left in the car.

¶5. Chase was first examined in Leakesville and then transferred to a George County ambulance. He was then examined in the emergency room of the George County Hospital by Dr. John Vanderwood. X-rays of Chase's head showed a large fracture in the skull. Dr. Vanderwood attempted to transfer Chase to a hospital in Mobile, but the child died en route. Dr. Vanderwood reported Chase's injuries to the Department of Human Services and to the Sheriff's Department as possible child abuse.

¶6. Dr. Gregory Wanger, a forensic pathologist, performed the autopsy on Chase. He determined that the cause of death was blunt force trauma to the back of the head, inflicted while Chase was stationary. Dr. Wanger did not believe that Chase would have been able to sit and cry after sustaining this injury, as Miller had alleged that he did. Wanger also stated that Chase's injuries were inconsistent with being struck by a car. Dr. Stephen Hayne reviewed Dr. Wanger's autopsy report and the other evidence and concurred in Wanger's finding. The Court of Appeals affirmed on direct appeal.

II.

¶7. Belinda Graham, an emergency medical technician for the Greene County Ambulance Service at the time of Chase's death, testified about the appearance of Chase Bradley when she treated him. She testified that he did not have external injuries, and she could not see bruises or scratches, grass stains, dirt or abrasions. The State attempted to ask whether in Graham's opinion Chase's injuries were consistent with being hit by a car. The trial court refused to allow Graham to answer this question, stating that it required an expert opinion and Graham had not been tendered as an expert. Despite this ruling the State asked the same question, or a variation thereof, at least two more times. Graham was never allowed to answer the question. The trial court denied Anthony Miller's request for mistrial. The Court of Appeals found that the repeated attempt to ask the question was error on the part of the prosecution, but also found that the trial court acted within its discretion in declining to grant a mistrial. The Court of Appeals noted that other witnesses, properly qualified as experts, subsequently answered the question Graham was not allowed to answer.

¶8. Miller cites *Edwards v. State*, No. 97-KA-00434-COA, 1999 WL 55990 (Miss. Ct.App. February 9, 1999), and *Kelly v. State*, 735 So. 2d 1071 (Miss.Ct.App. 1999). A review of these cases show that neither is applicable. *Edwards* involved reversal and dismissal of criminal charges due to improper jury instructions and insufficient evidence. *Kelly* involved repeated discovery and evidentiary violations on behalf of the prosecution. This issue is without merit.

III.

¶9. Miller next argues that Miss. Code Ann. § 97-3-19(2)(f) is unconstitutional because it does not require deliberate design. The statute states that the killing of a human being shall be capital murder "[w]hen done *with or without* any design to effect death, by any person engaged in the commission of the crime of felonious abuse and/or battery of a child in violation of subsection (2) of Section 97-5-39, or in any attempt to commit such felonies." Section 97-5-39(2) states that "[a]ny person who shall intentionally (a) burn any child, (b) torture any child or, (c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm shall be guilty of felonious abuse . . . ."

¶10. Miller cites ***Peterson v. State***, 268 So.2d 335 (Miss. 1972), where this Court ordered Peterson, who had received the death penalty, resentenced due to the U.S. Supreme Court's decision in ***Furman v. Georgia***, 408 U.S. 238 (1972). Miller also cites ***People v. Sargent***, 970 P.2d 409 (Cal. 1999), where the California Supreme Court found that a "mens rea of general criminal intent" was required to commit direct infliction of unjustifiable physical pain and mental suffering amounting to felony child abuse.

¶11. The Court of Appeals relied on ***Faraga v. State***, 514 So.2d 295, 302 (Miss. 1987), where this Court noted specifically the "with or without any design" language of § 97-3-19(2)(f), and stated: "The intent of the Legislature was that serious child abusers would be guilty of capital murder if the child died. These are the precise facts before this Court. As this Court has stated in prior decisions, the Legislature's prerogative is to define crimes and set the punishment for offenders, and this prerogative is given great latitude." In ***Faraga*** the death penalty was given, and this Court affirmed.

¶12. The basis for Miller's argument is unclear. If Miller is arguing that the death penalty may not be given where there is no deliberate design, or intent, then that argument is moot, as Miller did not receive the death penalty. Additionally, in ***Faraga***, this Court affirmed the conviction and death sentence of Faraga, but specifically noted, when discussing this lack of requirement of design to effect death, that the jury had made the requisite findings of intent under § 99-19-101(3)(a) and ***Enmund v. Florida***, 458 U.S. 782 (1982). That same reasoning applies here. This Court also found, in ***Gray v. State***, 351 So.2d 1342, 1345 (Miss. 1977), that the "with or without any design to effect death" language of § 97-3-19(2)(e), similarly worded to (2)(f) at issue here but dealing with different crimes, was not unconstitutionally vague: "The statute is not vague and simply defines the crime of capital murder as the killing of a human being without authority of law when engaged in the commission of the crime of kidnaping and the other felonies enumerated therein." *See also* ***Holland v. State***, 705 So.2d 307, 319 (Miss. 1997)(citing ***Gray***).

¶13. ***Faraga*** states that deliberate design is not required for all types of murder. This issue is without merit.

IV.

¶14. It appears that Miller finally argues that § 97-5-39 is unconstitutional because it does not allow for a lesser-included-offense instruction. The Court of Appeals stated the following in rejecting Miller's argument: "As a matter of policy, it was determined that felony child abuse/battery would be elevated to capital murder, without the opportunity for a lesser-included offense." This is an incorrect statement of the law.

¶15. Miller cites ***Kolberg v. State***, 704 So.2d 1307 (Miss. 1997), where this Court found that Kolberg apparently requested and should have received a felony manslaughter instruction. Miller also cites ***Watts v.***

*State*, 733 So.2d 214 (Miss.1999), though it is difficult to tell why. Miller never states which instruction that he offered should have been given, and never states which lesser-included-offense was applicable. A review of Miller's proposed instructions does not show one requesting a lesser-included-offense. The State filed instructions on both lesser offenses of simple murder and manslaughter, but withdrew these instructions without objection from Miller. This issue is without merit. The judgment of the Court of Appeals is affirmed.

¶16. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**