McMILLIN, Chief Judge,
for the Court:
¶ 1. Clonelle Shields, convicted by a jury in the Circuit Court of Madison County of aggravated assault, has appealed his conviction to this Court. In his appeal, he raises five issues that he claims warrant a reversal of his conviction. We find the issues to be without merit and, therefore, affirm the conviction.
I.
Facts
¶ 2. The State presented evidence that Shields, in the early morning hours of September 29, 1996, approached Jimmie Lee Ollie in an effort to collect a debt of ten dollars, and that, upon Ollie’s failure to pay the debt, Shields produced a pistol and shot Ollie one time as he attempted to flee. Shields testified in' his own defense, claiming that he was at his grandmother’s home in bed at the time the shooting occurred. In his direct testimony for the State, the victim claimed that he did not owe Shields any money, but that he had previously *478 paid some three or four dollars to Shields and, on the night he was shot, had attempted to borrow additional money from a cousin to meet Shields’s demand because he felt threatened by Shields. During cross-examination, Shields’s defense counsel appeared to be somewhat skeptical of Ollie’s claims that he was paying money he did not owe. On re-direct, the State was permitted to show that the disputed debt arose over a crack cocaine transaction between Ollie and Shields. Ollie testified that he had aided Shields in making a number of crack cocaine sales at or around Ollie’s residence, in exchange for which Shields had given him ten dollars, but that Shields had subsequently demanded the return of the money.
¶ 3. The State opened this line of inquiry with the question, “Mr. Ollie, why was the defendant, Clonelle Shields, claiming you owed him money?” At that point, defense counsel objected, saying only, “Objection as to why, Your Honor.” The trial court overruled the objection and the questioning continued.
¶ 4. The jury returned a verdict of guilty. Shields filed a post-conviction motion for JNOV or, in the alternative, a new trial. The trial court denied relief based on the motion and this appeal ensued. We will consider the issues raised by Shields in the same order presented in his brief.
II.
The First Issue: The Admissibility of Evidence of Shields’s Involvement in Drug Sales
¶ 5. Shields claims that evidence of his involvement in drug sales was inadmissible as being evidence of other bad acts admitted for no other purpose than to demonstrate his general bad character — a practice prohibited by Mississippi Rule of Evidence 404(b). We have quoted the contemporaneous objection lodged with the trial court when the State began its inquiry into the circumstances relating to the allegedly disputed debt. We consider that objection, by any fair reading, to have only raised considerations of relevancy. It is essential, when voicing an objection to evidence, to state with some particularity the basis for the objection. See M.R.E. 103(a)(1); Hooker v. State, 516 So.2d 1349, 1354 (Miss.1987). Any ground for exclusion of the evidence not presented to the trial court for ruling is deemed to have been waived. Read v. State, 430 So.2d 832, 838 (Miss.1983).
¶ 6. It is the opinion of this Court that, in order to fully acquaint the jury with the circumstances surrounding Ollie’s shooting, it was relevant to inquire into the nature of the disputed debt. Brown v. State, 483 So.2d 328, 330 (Miss.1986). Since the evidence was relevant, we conclude that defense counsel’s failure to specifically invoke the “other bad acts” provisions of Rule 404(b) acted as a waiver of any right to argue on appeal that the evidence should have been excluded on that basis. Likewise, any argument that the evidence, though having some probative value to permit the jury to have a fuller understanding of the circumstances of Ollie’s injury, was so prejudicial that its evidentiary worth was substantially outweighed by its potential prejudice under Mississippi Rule of Evidence 403 was waived for failure to affirmatively raise a Rule 403 objection before the trial court.
¶ 7. For these reasons, we conclude this issue to be without merit.
III.
The Second Issue: Evidence of Shields’s Self-Help Investigation
¶ 8. Shields wanted to testify that he had done his own investigation of the shooting, apparently at the urging of local police, and that his investigation suggested that Curtis Morment was the actual assailant in Ollie’s injury. The trial court excluded such testimony. The court observed that any accusatory statements of that nature would, of necessity, be based on hearsay information allegedly gathered *479 by Shields during his investigatory efforts. Shields now claims he should have been able to offer the jury the results of his independent inquiry to establish his theory of the case; namely, that he was charged in a clear case of mistaken identity. He cites no authority that suggests that his testimony would come within one of the recognized exceptions to the hearsay rule. “Hearsay is not admissible except as provided by law.” M.R.E. 802. Shields’s failure to advance a focused argument, supported by citation to relevant authority, that evidence of the results of his unofficial investigation fell under some recognized exception to the hearsay rule is fatal to his argument. Cavett v. State, 717 So.2d 722, 724 (Miss.1998). The trial court was entirely correct in his ruling on this issue.
IV.
The Third Issue: Refusal to Admit Evidence of Cocaine Levels in Victim’s Blood
¶ 9. During Ollie’s medical treatment after he was shot, a blood test was performed that indicated certain levels of cocaine in his blood. Prior to trial, the State and the defense entered into a stipulation as to the results of that test. The stipulation gave the mathematical determination of cocaine level and indicated that the level was considered a “positive” test for presence of cocaine. However, the stipulation as to the test results did not address the question of admissibility. The written stipulation, in fact, ended with the phrase, “if evidence is relevant.”
¶ 10. After both sides had rested, the court and attorneys were discussing jury instructions when defense counsel asked, for the first time during the trial, to have the stipulation read to the jury. The trial court refused, saying that the receipt of evidence had been concluded, that Ollie had already admitted to cocaine use on the day he was shot, and that the information concerning specific levels of cocaine in Ollie’s blood, without accompanying scientific evidence as to what effect that concentration of drugs might have on Ollie’s cognitive skills, would have no probative value. Shields now complains that the trial court committed reversible error in failing to admit the stipulation. He cites such cases as Pace v. Financial Sec. Life of Miss., 608 So.2d 1135, 1138 (Miss.1992), holding that a party is bound by any stipulations it might enter into.
¶ 11. We conclude that the trial court’s ruling was correct for either of two valid reasons. First, the attempted offer of the stipulation into evidence was too late. Both sides had rested and the receipt of evidence had been closed. While the trial court may have some authority to reopen the trial to admit additional evidence before a case is submitted to the jury (See, e.g., Perkins v. State, 253 Miss. 652, 655, 178 So.2d 694, 695-96 (1965)), such matters are committed to the sound discretion of the trial court. Id. Our authority to intercede could be based only on a conclusion that the trial court had abused that discretion. Coleman v. State, 697 So.2d 777, 784 (Miss.1997). In this case, the only possible relevance of Ollie’s cocaine use would have been to support the contention that he was so impaired that his ability to accurately recall and relate the events of his shooting was cast into serious doubt. There was already substantial evidence before the jury of Ollie’s abuse of cocaine on the day of the shooting without the results of his chemical blood analysis. To the extent that the defense wanted to impeach Ollie’s trustworthiness by this means, we conclude that it already had enough proof to make the attempt, and that the blood test results, to the extent that they were informative, would have been merely cumulative. The trial court is entitled, within the rules •of procedure, to govern the conduct of a trial. This right certainly includes authority to insist that evidence be timely presented and to refuse to deviate from the normal trial procedures except to prevent a substantial miscarriage of justice. We *480 do not conclude that the trial court’s refusal to permit the belated introduction of this stipulation substantially impacted on the fundamental fairness of Shields’s trial.
¶ 12. Secondly, we agree with the trial court that the test results, by and large, are uninformative to jury members presumed to have no special skills in matters of pharmacology. Absent some accompanying expert interpretive testimony, a stipulation that Ollie’s “blood contained 504.17 mA/min of cocaine with a cuhoff rate of 432.01” is, to the average layman, essentially meaningless insofar as it touches on the question of Ollie’s observation and recall abilities. It, therefore, fails the test for “relevant evidence” set out in Mississippi Rule of Evidence 401, and is, therefore, rendered inadmissible by Rule 402. Perhaps the jury could have drawn some useful information from the provision of the stipulation “that the qualitative interpretation is ‘positive’....” Nevertheless, it is difficult to envision how this one phrase would have substantially impacted the already overwhelming evidence that Ollie had been smoking a substantial quantity of crack cocaine on the day he was injured.
¶ 13. By our holding, we do not mean to suggest that, had the stipulation been offered on a timely basis and had it been accompanied by expert testimony that would have aided the jury in understanding the degree of Ollie’s impairment and the typical impact of such a level of impairment on cognitive abilities, the stipulation would have been inadmissible. We only conclude that, in the absence of any such predicate to introduction of the stipulation, the trial court appears to have been entirely correct in finding it to have little or no probative value. Therefore, his decision not to reopen the evidence to admit the stipulation was not error.
V.
The Fourth Issue: Improper Limitation on Summation by the Defense
¶ 14. Shields complains in this issue that his counsel was directed by the trial court to refrain from arguing during summation that the State had attempted to conceal Ollie’s possible impairment from cocaine use from the jury. This idea that the State sought to prevent the jury from hearing evidence favorable to the defense was based solely on the proposition that the State did not bring the fact of Ollie’s cocaine use out during its ease in chief. This issue is patently without merit. The defense was well aware of Ollie’s use of cocaine during the day of his injury in advance of the trial. The State did nothing to bar introduction of evidence by the defense of Ollie’s condition during the trial, beyond its resistance to Shields’s efforts to belatedly introduce the above-discussed stipulation — an effort taken long after the jury had learned of Ollie’s abusive use of cocaine. It is not the State’s duty to affirmatively introduce, during its case-in-chief, any evidence that might be exculpatory to the defense. The State’s duty, rather, is to disclose such information known to it to the defense prior to trial. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After such disclosure, it then becomes the defense’s duty to ensure that the jury is made aware of the evidence.
¶ 15. Any attempt to argue, on these facts, that the State had attempted to mislead the jury or to purposely prevent it from hearing evidence damaging to its case would have been without any foundation in fact. The trial court, in our view, acted properly in admonishing defense counsel not to advance such an unfounded argument.
VI.
The Fifth Issue: Improper Summation by the Prosecution
¶ 16. As his final point, Shields alleges that the trial court erred in denying his mistrial motion after the State repeatedly invoked Shields’s status as a drug dealer *481 during closing argument. His argument, however, is premised on the notion that evidence of Shields’s drug dealing was inadmissible. He cites such cases as Gray v. State, 351 So.2d 1342, 1345 (Miss.1977), which held that “proof of a crime distinct from that alleged in an indictment is not admissible against an accused.”
¶ 17. Contrary to the holding in Gray, we have already concluded that the evidence was admissible for reasons discussed in Section II above. In order to adequately present its theory of the case to the jury, the State was entitled to discuss all of the evidence in the context of how that evidence pointed to the defendant’s guilt of the particular charge being tried. Wilson v. State, 344 So.2d 739, 740 (Miss.1977). Our review of the State’s summation convinces us that, insofar as it dwelt on drug use, the bulk of the argument dealt with the issue, not of whether Shields was a drug dealer, but whether the jury might be less sympathetic to the victim because of his admitted drug use.
¶ 18. Nevertheless, we must observe that, shortly before being interrupted by an objection, the prosecuting attorney said, “Clonelle Shields was at his [Ollie’s] house selling drugs. He is a drug dealer in addition to a person that shoots somebody over ten dollars.” We find these remarks by the prosecution to be improper and inflammatory. The evidence of Shields’s activities as a drug dealer was admissible for the limited purpose of permitting the jury to have a complete understanding of the events leading up to Ollie’s injury and for no other purpose. This use of the evidence in summation to generally denigrate the defendant in the eyes of the jury was beyond the bounds of proper prosecutorial zeal and cannot be condoned.
¶ 19. However, we note that, immediately after these remarks, defense counsel objected and there was a conference a the bench after which the prosecuting attorney concluded his summation without further reference to Shields’s status as a possible drug dealer. In view of the overwhelming evidence of guilt, and in view of the brevity of these improper remarks, we conclude them to be error, without doubt, but harmless. See Coxwell v. State, 387 So.2d 104, 106 (Miss.1980) (holding as harmless error when state referred to defendant in closing as a “crooked lawyer”).
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.