## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2017-KA-00029-COA

**HENRY BERNARD LEWIS A/K/A HENRY LEWIS A/K/A HENRY B. LEWIS**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2016 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/28/2017 |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. A jury found Henry Lewis guilty of possession of a firearm as a convicted felon. *See* Miss. Code Ann. § 97-37-5 (Rev. 2014). The Madison County Circuit Court then sentenced Lewis as a habitual offender to ten years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Lewis argues the circuit judge committed reversible error by telling Lewis that he would have to represent himself at trial with standby counsel if he chose to give his own opening statement. Finding error, we reverse the circuit court's judgment and remand the case for a new trial.

**FACTS**

¶2.    Around 9 a.m. on October 17, 2015, Ridgeland police officers responded to a call about a disturbance in a motel parking lot. Upon arriving in the motel parking lot, the officers encountered Lewis and Latoya Walker, who were standing next to a Jeep with a broken window. Lewis and Walker appeared to have been arguing about the broken window. As the officers tried to ascertain what had happened and identify everyone present, Lewis became agitated and tried to flee the scene. A scuffle ensued, and the officers arrested Lewis.

¶3.    Prior to his arrest, however, Lewis told the officers that he and Walker had been staying in Room 222. Lewis gave the officers his room key card as proof, and Corporal John Garcia took the key card to the motel's front desk to verify the room number. The motel desk clerk informed Corporal Garcia that the key card actually opened the door to Room 223. A motel employee then accompanied Corporal Garcia to Room 223.

¶4.    Upon reaching Room 223, Corporal Garcia found the door open. Corporal Garcia observed an eight-year-old boy lying on one of the beds in the room. The boy came to the door and told Corporal Garcia that his mother, Walker, was in the parking lot with Lewis. The boy then fully opened the motel-room door, and Corporal Garcia spotted what he later described as a 9-millimeter "semiautomatic machine gun" sitting in plain view on a counter. Corporal Garcia also heard the bathroom shower running and asked whether anyone else was in the room. The boy responded that there were people in the shower but that he did not know them.

¶5.    After asking the motel employee to escort the boy to the front office, Corporal Garcia

2

entered the room and seized the weapon. He then unloaded the gun's magazine and took one round from the gun's chamber. Once another officer arrived as backup, Corporal Garcia directed the shower occupants to exit the bathroom. Walter Thompson and Kimberly Red exited the bathroom, and the officers handcuffed them. While checking the room for additional weapons, the officers discovered marijuana underneath a pillow on one of the beds.

¶6.     The officers arrested Lewis, Walker, Thompson, and Red and transported them to the police department. At the police department, Corporal Garcia informed Thompson that he was being charged with possession of marijuana and possession of a firearm by a convicted felon. Corporal Garcia testified that Lewis was present and that, upon hearing the charges against Thompson, Lewis began to apologize to Thompson. Corporal Garcia stated that Lewis told Thompson, "I'm sorry; I'm sorry. Man, that's my gun. . . . Man, I know that's on me; that's on me."

¶7.     A grand jury later indicted Lewis, as a habitual offender, for possession of a firearm by a convicted felon. The circuit court assigned Lewis's case to the public defender's office. Abraham Rowe was then appointed as Lewis's trial counsel. The record reflects that Rowe assisted Lewis in waiving his arraignment and pleading not guilty to the crime charged. At Lewis's trial, Rowe made the opening statement and closing argument, cross-examined the State's witnesses, and moved for a directed verdict following the State's case-in-chief. The record reflects that the defense called no witnesses of its own to testify and instead rested following the denial of its motion for a directed verdict.

¶8.     After considering the evidence and testimony presented during Lewis's trial, the jury found Lewis guilty. The circuit court then sentenced Lewis to ten years in MDOC's custody. Lewis filed an unsuccessful motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Aggrieved, Lewis appeals.

## DISCUSSION

¶9.     Lewis raises one assignment of error on appeal. He asserts the circuit judge erred by telling him that he would have to represent himself at trial, with counsel on standby, if he wished to give his own opening statement. Lewis argues the circuit court's instruction violated his constitutional right to participate in his own defense. As a result of this alleged error, Lewis seeks a new trial.

¶10.    Article 3, Section 26 of the Mississippi Constitution states that "[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both[.]" The Mississippi Supreme Court has repeatedly recognized a defendant's right to make his own opening statement. *See Armstead v. State*, 716 So. 2d 576, 580 (¶16) (Miss. 1998) (citing cases upholding the defendant's right to make his own opening and closing arguments). Furthermore, our supreme court has reversed and remanded cases for a new trial where the trial court refused to allow the defendant to do so. *See Bevill v. State*, 556 So. 2d 699, 710 (Miss. 1990); *Trunell v. State*, 487 So. 2d 820, 825-26 (Miss. 1986); *Gray v. State*, 351 So. 2d 1342, 1345 (Miss. 1977).

¶11.    "While every accused has the constitutional right to be represented by an attorney, it must be balanced against the right of an accused to represent himself, that is, to present his

own case pro se without an attorney." *Metcalf v. State*, 629 So. 2d 558, 562 (Miss. 1993). "Where a criminal defendant does not forego his lawyer's services, . . . there is no tension between the right to counsel and the right to self-representation." *Armstead*, 716 So. 2d at 581 (¶20). To achieve the desired balance between self-representation and representation by an attorney, many courts employ the following solution:

> Hybrid representation is considered to encompass both the participation of the defendant in the conduct of his trial when he has not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant is defending pro se. Courts commonly refer to the role of the attorney in a situation in which a defendant has not effectively waived assistance of an attorney as that of "co-counsel." The role of the attorney in a situation where the defendant has effectively waived counsel and is proceeding pro se is that of "standby" or "advisory" counsel. The former tends to involve a more active role in the representation of the defendant than the latter.

*Metcalf*, 629 So. 2d at 562.

¶12. Mississippi precedent also acknowledges that a defendant's decision to participate in his trial defense fails to override his separate constitutional right against self-incrimination. *Armstead*, 716 So. 2d at 580 (¶16). Rather than deprive a defendant of his right to address the jury, the trial court should "warn him that if he makes unsupported statements, those statements will be treated as a 'partial waiver' of his privilege against self-incrimination." *Id.* at (¶17) (quoting *Jones v. State*, 381 So. 2d 983, 993-94 (Miss. 1980)). "The State will then be free to comment upon the fact that no such statement was made by him as a witness under oath." *Id.*

¶13. In the present case, just before opening statements, Lewis's trial counsel, Rowe, informed the circuit judge that Lewis wished to make his own opening statement. The

5

following exchange occurred:

| | |
|---|---|
| Mr. Rowe: | [Your Honor,] Mr. Lewis is asking to be allowed to address the jury right now, and I've explained to him that Mr. Mayfield[, the State's attorney,] will make an opening statement[,] and then he can make one. |
| The Court: | That's correct. You can certainly do it, but it will be after Mr. Mayfield's. Do you want to make your opening statement? |
| [Lewis]: | Yes, I do. |
| Mr. Mayfield: | Your Honor, if I could, I'll ask the Court to advise him that he is not to testify when making an opening statement. |
| The Court: | I understand. Mr. Lewis, . . . [w]hen you make that opening statement, make sure there's no testimony. You cannot testify during that opening statement. And if you do, [the State is] going to object to it[ i]f there's any type of testimony. Just [say] what your lawyer will be able to prove in the case, okay. |
| Mr. Rowe: | I've advised him over and over it's what the evidence will show, what the evidence will show. |
| . . . . | |
| The Court: | For the record, Mr. Lewis . . . has asked to make opening statements on his behalf. And, Mr. Lewis, I'm also going to ask you, do you intend to cross-examine witnesses that the State brings, or is Mr. Rowe going to represent you? What's your intention here? |
| [Lewis]: | I asked Mr. Rowe—I have the layout that I wanted him to do. I mean, I am going to say if he [does not] ask the questions that I want[,] I will object myself and call the Court's indulgence. But the only thing— |
| The Court: | Well, you say . . . object. If he's not asking questions, I'm not going to allow you to object to your own |

6

witness's testimony, but if you would like to ask some questions[,] I'm going to allow that, okay.

[Lewis]: Yes, Your Honor.

The Court: Now, if I do that, if I allow you to represent yourself in this matter, Mr. Rowe is going to still be here. He's going to still be in an advisory position. Do you understand that?

. . . .

The Court: And what I'm going to tell you right now is[,] I'm going to expect you to understand and to abide by the Mississippi Rules of Evidence and also the Mississippi Rules of Criminal Procedure. Do you understand that?

. . . .

The Court: If there[ are] some objections made by the State[,] . . . I'm going to rule on those objections just like if you were an attorney. Do you understand that?

[Lewis]: Yes, sir.

The Court: I'm also going to let the jury know before you give that opening statement that you will be giving that opening statement and that Mr. Rowe will be here in an advisory position. Do you understand that?

. . . .

Mr. Mayfield: Your Honor, could I ask that Mr. Rowe and his client be allowed a couple of minutes to confer and then let Mr. Rowe announce to the Court which one of them is going to do what.

The Court: I think that's a good idea. Mr. Lewis, I don't want to be blindsided by not knowing when you're going to question them. And, typically, let me tell you how I do this. I don't allow two attorneys to ask questions and to try the case unless I know what each of them is going to

do. For instance, if I know that the State in this matter, one of them is going to do half of their closing, the other is going to do the other half, one is going to do a witness, I don't have any problem with that. But I will not allow them, and I won't to a certain degree—and I'm going to be somewhat lenient here to a certain degree—I won't allow you to double up on a witness, okay. So that needs to be something that both of y'all need to talk about before the witnesses come up right here, and you need to let me know right now. So I agree with Mr. Mayfield. If you'll take just a few minutes. Mr. Rowe knows the witnesses [who] are coming. He's got a list of those and knows the questions . . . that he's going to ask. So if there's something else, y'all need to go ahead and take care of that right now, okay.

. . . .

Mr. Rowe: Your Honor, apparently, I'm going to . . . cross-examine the State's witnesses. [Mr. Lewis, a]re you going to do the opening?

The Court: Well, now, look, this is what I'm saying, and please understand me here. Mr. Lewis, I need to know right now. Now, look, here's the deal in here. I talk. You listen. There won't be any argument like you have with your attorney.

[Lewis]: I'm not trying to argue.

The Court: Don't worry. You won't, okay. *Either you represent yourself or Mr. Rowe represents you. Now, you can have some input like any other client has with [his] attorney[,] and you can talk to him, but one or the other. I'm going to allow him to stay, or I'm going to order him to stay in an advisory position if you want to represent yourself; and I want you to represent yourself throughout the trial. If you want Mr. Rowe to represent you, he's going to represent you throughout the trial. You can have some say so in that. You can say anything that you'd like to talk to him about, but if you get up[,] and you make opening statements[,] and you want to*

8

|  |  |
|---|---|
|  | *represent yourself, you're representing yourself and Mr. Rowe will be there strictly in an advisory position. One or the other.* |
| [Lewis]: | Only thing—I understand what you're saying. Only thing, like I said, I just want to give an input. Mr. Rowe can handle this. The only thing I wanted to make an opening statement about— |
| The Court: | *If you make an opening statement, you're going to be representing yourself.* |
| [Lewis]: | If I make that opening statement? |
| The Court: | If you make that opening statement. |
| [Lewis]: | That's what I didn't understand. |
| The Court: | *That's what I'm saying. It's either one or the other.* I'm not going to have a combination of you questioning one witness and him questioning another. I'm not going to do that. |
| [Lewis]: | That wasn't what I was saying. I just wanted to make an opening statement. |
| The Court: | So how are we going? It's called pro se if you're going to represent yourself, or is Mr. Rowe going to represent you? |
| [Lewis]: | Can he make an opening statement for me? |
| The Court: | If he represents you, he's going to make—well, certainly he can make an opening statement, yes. |
| [Lewis]: | Okay. That's all I wanted. |

(Emphasis added).

¶14.   Upon review, we find the circuit judge erred by instructing Lewis that he would have to proceed pro se with standby counsel if he chose to make his own opening statement. As

9

previously discussed, Mississippi caselaw clearly allows a defendant "to exercise both his right to assistance of counsel and his right to address the jury[.]" *Armstead*, 716 So. 2d at 581 (¶20). In the present case, Lewis sought to exercise both these rights. Without waiving his right to trial counsel, Lewis sought hybrid representation and expressed a desire to participate in his defense on a limited basis. The circuit judge initially appeared amenable to Lewis's request for hybrid representation and properly instructed Lewis not to testify during his opening statement and to abide by applicable evidentiary and criminal-procedural rules. *See Smith v. State*, 221 So. 3d 1050, 1051-52 (¶5) (Miss. Ct. App. 2016).

¶15. However, after allowing Lewis to confer with his attorney, the circuit judge informed Lewis that either his attorney would represent him or that he, Lewis, would represent himself while his attorney acted in a merely advisory capacity. The circuit judge specifically told Lewis, "If you make an opening statement, you're going to be representing yourself." In effect, the circuit judge's statements presented Lewis with a choice between either his right to self-representation or his right to representation by his attorney, but not access to both rights. As the record reflects, based on his exchange with the circuit court, Lewis decided not to pursue his request to address the jury and make his own opening statement but instead allowed his appointed attorney to fully conduct his trial.

¶16. Mississippi caselaw recognizes the personal nature of a defendant's right to defend himself and that he bears the consequences should he choose to participate in his own defense. *Brooks v. State*, 763 So. 2d 859, 867 (¶25) (Miss. 2000). In *Brooks*, the supreme court explained that the courts "should not ignore a defendant's persistent pleas that he be

allowed to exercise a constitutional right, even if it appears that the defendant would have been wiser to waive the right in question." *Id.* at (¶26). Because the circuit judge's statements here prevented Lewis from exercising his constitutional right to participate in his defense by giving his own opening statement, we reverse Lewis's conviction and sentence and remand the case for a new trial consistent with this opinion.[1]

¶17.  **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[1] *See Bevill*, 556 So. 2d at 710; *Trunell*, 487 So. 2d at 825-26; *Gray*, 351 So. 2d at 1345.